# EXHIBIT 4



**UNITED STATES**
**POSTAL SERVICE**®

# Reasonable Accommodation, An Interactive Process

Handbook EL-307                                         September 2003
                                                        Transmittal Letter

**A.  Introduction.** The Transformation Plan of the Postal Service™ is about enabling the
    Postal Service to successfully carry out its long-standing mission of providing affordable,
    universal service. A key goal of the Plan is maintaining an effective, diverse, and highly
    motivated workforce. Handbook EL-307, *Reasonable Accommodation, An Interactive
    Process,* is a critical tool for meeting our legal and regulatory responsibilities by
    providing managers and supervisors with procedures, guidance, and instructions on
    matters of reasonable accommodation that involve applicants and employees with
    disabilities.

**B.  Explanation.** This issue of Handbook EL-307, *Reasonable Accommodation, An
    Interactive Process,* contains revisions to procedures and guidance on reasonable
    accommodation in employment and placement matters.

**C.  Distribution.** This handbook is available electronically on the Postal Service PolicyNet
    Web site at *http://blue.usps.gov/cpim;* click on *HBKs* and on the Internet Web site at
    *www.usps.com.*

**D.  Comments.**

   **1.  Submit questions and comments about the content of this document in writing to:**

       SELECTION EVALUATION AND RECOGNITION
       EMPLOYEE RESOURCE MANAGEMENT
       US POSTAL SERVICE
       475 L'ENFANT PLAZA SW RM 9671
       WASHINGTON DC  20260-4250

   **2.  Submit questions regarding the organization or editing of this document to:**

       POLICIES AND PROCEDURES INFORMATION
       PUBLIC AFFAIRS AND COMMUNICATIONS
       US POSTAL SERVICE
       475 L'ENFANT PLAZA SW RM 5540
       WASHINGTON DC  20260-5540

**E.  Cancellations.** All previous issues of Handbook EL-307 are obsolete.

**F.  Effective Date.** This handbook is effective upon receipt.

*DeWitt O. Harris*
*Vice President*
*Employee Resource Management*

# Contents

1  **Introduction to Reasonable Accommodation** ............................    **1**
   11   Policy ...........................................................................    1
   12   Purpose ........................................................................    1
   13   Applicable Laws ...............................................................    1
        131   The Rehabilitation Act ...............................................    1
        132   The Americans With Disabilities Act ................................    2
   14   Persons Eligible for Protection Under the Rehabilitation Act ............    2
        141   Determining Who Is a Person With a Disability .....................    2
              141.1   Defining Physical and Mental Impairments ...................    2
              141.2   Defining Major Life Activities ................................    2
              141.3   Defining "Substantially Limits" Criteria .......................    3
        142   Determining Who Is a Person With a Record of a Disability .........    3
        143   Determining Who Is a Person Associated With a Person With a Disability ............    4
        144   Determining Who Is a Person Regarded as Having a Disability ......................    4
        145   Determining Who Is a Qualified Person ..............................    4
        146   Determining Direct Threat .............................................    4
        147   Determining the Essential Functions of the Job ....................    5
   15   Requirements to Provide Reasonable Accommodation ..................    5
        151   Goal .....................................................................    5
        152   Determining What Is Reasonable ....................................    5
        153   Determining What Is Undue Hardship ...............................    6
              153.1   Examples of Undue Hardship ................................    6
        154   Reducing the Direct Threat ..........................................    6
   16   Other Laws ....................................................................    7
        161   Multiple Protections ..................................................    7
        162   Confidentiality ........................................................    7

2  **The Reasonable Accommodation Process** ...........................    **9**
   21   Questions About Reasonable Accommodation ..........................    9
   22   The Interactive Process ......................................................    10
        221   Step One:  Determine Whether Individual Has a Disability ..........    10
        222   Step Two:  Determine the Essential Functions of the Job ...........    11
        223   Step Three:  Identify the Abilities and Limitations of the Individual ...................    12
              223.1   Gaining the Individual's Participation ........................    12
              223.2   Documentation ................................................    12
              223.3   Defining Abilities and Limitations — Job Applicants .........................    13
              223.4   Defining Abilities and Limitations — Employees ...............................    13

Contents

224    Step Four:  Identify Potential Accommodations ..................................... 14

225    Step Five:  Determine the Reasonableness of the Accommodations and
       Select Options ................................................................... 14

   225.1    Altering the Essential Functions of the Job .................................... 14

   225.2    Identifying Undue Hardship ................................................... 15

   225.3    Determining the Impact on Collective Bargaining Agreements .................. 15

   225.4    Minimizing Safety Hazards ................................................... 16

23   Accessibility of Facilities ............................................................. 16

24   Time Frames for Processing Requests for Reasonable Accommodation .................. 16

25   Denying a Requested Accommodation ................................................ 17

   251    Reasons for Denial ............................................................. 17

   252    Informal Dispute Resolution ..................................................... 18

26   Record Keeping ..................................................................... 18

   261    Completing the Reasonable Accommodation Decision Guide ...................... 18

   262    Filing the Reasonable Accommodation Decision Guide ........................... 19

3   Reasonable Accommodation in the Examination Process ............... 27

31   Special Needs of Test Applicants .................................................... 27

32   Postal Service Examination Policy for Applicants With Disabilities ...................... 27

   321    Maintaining the Competitive Nature of the Examination ........................... 28

   322    Preserving the Examination's Effectiveness as a Measurement Tool ................ 28

33   Determination of Reasonable Accommodation for Applicants With Disabilities ............. 29

   331    Applicant Responsibilities ........................................................ 29

      331.1    Requesting a Reasonable Accommodation for Examinations ................... 29

   332    Postal Service Responsibilities ................................................... 30

      332.1    Accommodations That Do Not Affect Competitive Nature or Validity
              of the Selection Process ................................................... 32

         332.11    Accessibility Accommodations of Testing Site ........................... 32

         332.12    Other Testing Accommodations ...................................... 32

      332.2    Accommodations That May Affect the Competitive Nature or Validity
              of the Selection Process ................................................... 33

   333    Accommodations That May Not Be Reasonable in Examinations .................... 33

   334    Other Selection Process Accommodations ......................................... 34

      334.1    Interviews ................................................................. 34

      334.2    Performance Tests .......................................................... 34

      334.3    Applications, Supplemental Applications, and Employment Questionnaires ....... 34

      334.4    End-of-Training Examinations ............................................... 34

Contents

**4   Employment and Placement Procedures** .................................  **37**

   41   Policy .................................................................................  37

   42   Recruitment ........................................................................  37

   43   Competitive Selection and Placement of Individuals With Disabilities ....................  38

   44   Noncompetitive Selection and Placement of Individuals With Disabilities .................  39

      441   Overview .......................................................................  39

      442   Job Information for Rehabilitation Counselors .....................................  39

      443   Noncompetitive Hiring Process ....................................................  40

      444   Probation Period for Individuals Hired Under Noncompetitive Process ...............  41

   45   Medical Assessment ................................................................  41

      451   Information Furnished for Medical Assessment ....................................  41

      452   Function of the Medical Assessment ..............................................  42

   46   Determining Whether and How to Accommodate Physical Limitations ....................  42

**5   Reasonable Accommodation After Appointment** .........................  **45**

   51   Orientation and Training ............................................................  45

   52   Bids, Promotions, and Reassignments ...............................................  45

   53   Employee Request for Reasonable Accommodation in Current Job ......................  46

      531   Reassignment as a Reasonable Accommodation ...................................  47

   54   Modification of Vehicles, Vehicle Assignments, and Automated Mail Processing
Machines as a Reasonable Accommodation ...........................................  48

   55   Disability Retirement ...............................................................  48

**Glossary** ...........................................................................  **51**

# Exhibits

Exhibit 2-1
U.S. Postal Service Confirmation of Request for Reasonable Accommodation . . . . . . . . . . . . . . . . . .    21

Exhibit 2-2
U.S. Postal Service® Reasonable Accommodation Decision Guide . . . . . . . . . . . . . . . . . . . . . . . . . . .    23

Exhibit 2-3
Denial Letter — Not protected under Rehabilitation Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    25

Exhibit 2-4
Denial Letter — For Qualified Person with a Disability, Including Appeal Rights . . . . . . . . . . . . . . . .    26

Exhibit 3-1 (p. 1)
Accommodation Options for Testing Individuals Who Are Deaf or Hard of Hearing . . . . . . . . . . . . . .    35

Exhibit 3-1 (p. 2)
Administering 470 Entrance Battery and 460 Rural Carrier Examinations When Using a
Sign Language Interpreter for the Deaf . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    36

Exhibit 4-1
PS Form 3666, Certification for Postal Service Employment of Individuals with Severe Disabilities    43

Exhibit 5-1
Reasonable Accommodation for the Deaf and Hard of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    49

# 1 Introduction to Reasonable Accommodation

## 11 Policy

Postal Service™ policy provides procedures, guidance, and instructions on matters of reasonable accommodation that involve applicants and employees with disabilities in order to assist managers and supervisors in meeting our legal and regulatory responsibilities in the day-to-day decision-making process.

## 12 Purpose

This handbook establishes procedures that enable Postal Service managers and supervisors to make sounds decisions regarding reasonable accommodation for qualified individuals with disabilities during the processes of recruitment, examination, or hiring and during the course of their employment, including requests for accommodation to perform a current job or for placement in other jobs.

## 13 Applicable Laws

### 131 The Rehabilitation Act

The Rehabilitation Act prohibits discrimination against qualified employees and job applicants with disabilities in the federal government, including the United States Postal Service®.

The Rehabilitation Act also imposes an obligation on the Postal Service to find reasonable ways to accommodate a qualified individual with a disability. In other words, the Rehabilitation Act requires the Postal Service to consider ways to change the manner of doing a job to allow a qualified person with a disability to perform the essential functions of the particular job, or to be considered for a position he or she desires.

132 **The Americans With Disabilities Act**

The Americans with Disabilities Act (ADA) covers private-sector employers and the Rehabilitation Act covers public-sector employers.

# 14 Persons Eligible for Protection Under the Rehabilitation Act

The Rehabilitation Act protects four categories of people. Regardless of the specific category, an individual must be qualified to perform the job and show that he or she is one of the following:

- A person with a disability.
- A person with a record of a disability.
- A person associated with a person with a disability.
- A person regarded as having a disability.

141 **Determining Who Is a Person With a Disability**

To determine whether an individual is a person with a disability, the following two questions must be resolved:

- Does the person have a physical or mental impairment?
- If so, does that physical or mental impairment substantially limit a major life activity?

141.1 **Defining Physical and Mental Impairments**

A physical impairment can include:

- Any physiological disorder or condition.
- Cosmetic disfigurement.
- Anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory, cardiovascular, reproductive, digestive, genito-urinary, hemic, lymphatic, skin, and endocrine.

Mental impairments can include any mental or psychological disorder, such as mental retardation or organic brain syndrome, and can also encompass emotional or mental illness and specific learning disabilities.

Physical and mental impairments do not include normal physical characteristics, such as being overweight, or personality traits within the range of normal, such as poor judgment or a quick temper.

141.2 **Defining Major Life Activities**

Major life activities include such obvious characteristics as hearing, seeing, walking, speaking, caring for oneself, performing manual tasks, and breathing. Generally, a major life activity is something of fundamental significance within the meaning of the Rehabilitation Act and not simply an

activity important to a particular individual. Major life activities include learning and working but do not include activities such as swimming, shopping, or enduring physical stress.

It is important to note that where individuals claim that they are limited in the major life activity of working, they must show that they are significantly restricted in their ability to perform either a class of jobs, or a broad range of jobs in various classes, as compared to the average person of comparable training, skills, and abilities. Generally this requirement could not be met simply by asserting inability to work in any job for a particular employer.

### 141.3  Defining "Substantially Limits" Criteria

An impairment substantially limits a major life activity if that impairment renders the individual either unable to perform a major life activity or significantly restricts his or her performance of that activity as compared to the average person's performance of the activity.

Not all medical conditions are substantially limiting. A person with broken bones or a sprained ankle does not have a permanent or long-term impairment because the condition will heal within a reasonable time. Similarly, a woman who has a normal pregnancy (and related conditions) does not have a permanent medical condition and therefore does not meet the definition of a person with a disability. In addition, if an individual employs measures to mitigate his or her impairment (e.g., medication, eyeglasses), the effect of those measures should be considered in determining whether an impairment is substantially limiting as to that individual.

Some permanent impairments are not substantially limiting. A back condition that places lifting restrictions of 30 or more pounds has been deemed not to be a substantially limiting condition. Other examples of permanent impairment that do not substantially limit a major life activity are:

- Inability to get along with a supervisor.
- Simple obesity.
- Allergies to a particular substance used only in a particular job or found in a particular workplace.

### 142  Determining Who Is a Person With a Record of a Disability

A person with a record of a disability is someone who does not now, but sometime in the past, had a medical condition that at that time substantially limited a major life activity. Examples of persons with a record of a disability may include:

- A person who suffered from cancer but whose cancer is in remission.
- A person who had repeated hospitalizations and numerous periods of leave for a long-term or permanent ailment.

### 143  Determining Who Is a Person Associated With a Person With a Disability

The law prohibits discrimination against persons who are associated with or take care of a person with a disability. The Postal Service may not refuse to hire a person simply because he or she must take care of a spouse or family member who has a disability.

### 144  Determining Who Is a Person Regarded as Having a Disability

The Rehabilitation Act protects a person who the employer erroneously believes has an impairment that substantially limits a major life activity. For example, an applicant for a letter carrier job who has a limp may be regarded as having a disability if the hiring official concludes without any inquiry that the applicant could not walk a full route. In this case, the applicant may be erroneously regarded as having a disability because there is no individualized basis or medical support for concluding that the applicant cannot perform the major life activity of walking.

An employee may also be regarded as having a disability if the employer believes the employee has an impairment that the employee does not have at all. For example, an employee who is HIV positive is believed to have AIDS.

There is a significant difference between erroneously regarding a person as having a disability and finding a person medically unsuitable for a job. It is legal for a hiring official to conclude, based on current medical data, that the person has a medical condition that prevents him or her from performing an essential function of the job. For example, if the medical records show that a job applicant for a city carrier position cannot walk more than 50 feet, then the hiring official can legitimately conclude that the job applicant cannot perform the requirements of the job in an urban environment and can refuse to hire him or her.

### 145  Determining Who Is a Qualified Person

To be protected under the Rehabilitation Act, an individual must also be a "qualified person" for the job. In other words, the person must meet both the job prerequisites and be able to perform the essential functions of a job safely, with reasonable accommodation if necessary, just like any other employee. Therefore, a person seeking a truck driver job must have a valid driver's license, and an applicant for a data conversion operator job must have the ability to type.

### 146  Determining Direct Threat

An individual is not a qualified person for the position if his or her performance in the job would subject them or others to a direct threat of harm. Direct threat means a significant risk of substantial harm to the health or safety of the person or others that cannot be eliminated or reduced to an

acceptable degree by reasonable accommodation. The risk of harm must be more than just speculative or hypothetical. There must be a high probability of verifiable, substantial harm.

To this end, a determination that a person poses a direct threat to the health and safety of himself, or of others, must be supported by objective, factual medical or scientific evidence. Determining whether an employee poses a significant risk of substantial harm to him or herself or to others must be based on an individualized assessment of that person's ability to safely perform the essential functions of the job in light of the following factors:

- The nature and severity of the potential harm.
- The duration of the risk.
- The likelihood that the potential harm will occur.
- The imminence of the potential harm.

In assessing the degree of risk, you will want to consider:

- Input from the applicant or employee.
- The applicant or employee's experience in prior jobs that were similar.
- The opinions of medical experts, rehabilitation counselors, and physical therapists.
- The opinions of engineering or other job specialists, when needed.

Remember, in determining whether the individual poses a risk of substantial harm, you must also consider whether there is a reasonable accommodation that would reduce the direct threat of harm to an acceptable level.

### 147  Determining the Essential Functions of the Job

The essential functions of a job are those functions that define the job. In other words, the job exists to perform those tasks. The essential functions of a job are not the marginal or infrequently performed tasks that could be eliminated without altering the fundamental nature of the job. The items you should consider in defining the essential functions of the job are outlined in part 222.

## 15   Requirements to Provide Reasonable Accommodation

### 151  Goal

The goal of reasonable accommodation is to enable qualified individuals with disabilities to perform the essential functions of the job and to enjoy equal employment opportunities.

### 152  Determining What Is Reasonable

A reasonable accommodation is one that is effective and practicable in removing workplace barriers for individuals with disabilities.

An accommodation is not reasonable when it requires the elimination of legitimate selection criteria, lowers standards of performance or production, creates a job where none exists, violates the seniority provisions of a collective bargaining agreement (absent special circumstances, see section 225.3), reallocates or eliminates essential job functions, or otherwise substantially changes the fundamental nature of the job. (See Chapter 2 for detailed information.)

## 153 Determining What Is Undue Hardship

The law does not require that Postal Service provide any and every accommodation requested by an applicant or employee. The Postal Service is only required to provide those accommodations that would allow the individual to perform the essential functions of the job and/or to enjoy equal employment opportunity. Accommodations that would impose an undue hardship on Postal Service operations are not required.

### 153.1 Examples of Undue Hardship

Expense — Accommodations that are unduly costly and require expenditure of significant sums of money are generally not required. Factors establishing hardship based on cost are:

- Nature and cost of accommodation.
- Overall financial resources of the facility or organization and the number of persons employed.
- Effect on expenses and resources.

Fundamental Alteration of the Nature or Operation of the Business — Accommodations that would change the fundamental nature of business operations are generally not required.

Factors establishing hardship based on fundamental alteration are:

- Type of operations conducted.
- Composition, structure, and functions of the workplace.
- Geographic separateness and administrative or fiscal relationship of the facility in question to the employer.

Impacts of the accommodation upon the fundamental alteration of the operation of the facility are:

- The ability of other employees to perform their duties.
- The facility's ability to conduct business.

## 154 Reducing the Direct Threat

The law does not require the Postal Service to adopt an accommodation if it will not eliminate or reduce the direct threat of substantial harm to the individual or others to acceptable, reasonable safety levels.

# 16    Other Laws

### 161    Multiple Protections

Although a person may not qualify for reasonable accommodation under the Rehabilitation Act, he or she could still be entitled to the benefits of other laws, rules, or regulations. For example, a pregnant employee would not be covered by the Rehabilitation Act, but she may be eligible for leave protection under the Family and Medical Leave Act (FMLA).

Similarly, there are times when both the Rehabilitation Act and other laws may cover an employee. An employee who sustains an on-the-job injury that results in a permanent or long-term substantial limitations of a major life activity may be protected by both the Rehabilitation Act and the Federal Employees Compensation Act (FECA). In addition, an employee with a serious health condition covered by FMLA may also be covered by the Rehabilitation Act if it is long-term and substantially limits a major life activity. The criteria for any one of the three statutes can be met simultaneously.

It is important to understand that the Postal Service's obligations under each law and under collective bargaining agreements are not mutually exclusive. The Postal Service must simultaneously satisfy the separate requirements imposed upon it by each authority.

### 162    Confidentiality

In accordance with the Privacy Act and Postal Service policy, an employee's medical records are to be treated as confidential information (see Management Instruction EL-860-98-2 dated 5/5/98). Both the Privacy Act and the Rehabilitation Act specifically prohibit disclosure of medical information except in certain limited situations. For example, when there is a need to know to provide a requested accommodation, you may give or receive access to records to make that determination.

This page intentionally left blank

# 2 The Reasonable Accommodation Process

## 21 Questions About Reasonable Accommodation

Qualified individuals with disabilities may require reasonable accommodation during the application process and/or during the course of their employment with the Postal Service. Requests for reasonable accommodation can be made orally or in writing to an employee's supervisor, manager, or local manager of Human Resources. A job applicant may make a request for accommodation to the examiner, selecting official, or local manager of Human Resources. When you receive an accommodation request, you are responsible for processing that request using the guidance contained in this handbook. Alternatively, many districts and areas have Reasonable Accommodation Committees to whom you may refer the request for processing, as appropriate.

Questions concerning reasonable accommodation arise in three instances:

- When an applicant requests reasonable accommodation in the examination or hiring process.
- When you are deciding whether an applicant will be able to perform the job with or without reasonable accommodation.
- When an employee requests reasonable accommodation to perform his or her current job.

The reasonable accommodation process is activated whenever:

- A request for reasonable accommodation is made, orally or in writing, by the employee or applicant, or someone acting on the employee's/applicant's behalf. To request an accommodation, an individual may use plain language and need not mention the Rehabilitation Act or use the phrase "reasonable accommodation."
- An employee with a known physical or mental impairment is observed having difficulty performing essential functions of his or her job because of his or her impairment.

Verbal requests for reasonable accommodation should be documented for local record keeping and to ensure that every request receives a timely decision (see Exhibit 2-1, *Confirmation of Request for Reasonable Accommodation*, and Exhibit 2-2, *Reasonable Accommodation Decision*

Guide). **Exception:** Once an employee requests and is granted a type of reasonable accommodation that he or she is likely to need on a repeated basis (e.g., a sign language interpreter), then documentation for record-keeping purposes is not required each time the accommodation is needed (see subchapter 26).

Whenever the reasonable accommodation process is activated, you must go through a five-step process to determine whether to provide an accommodation to the job applicant or the employee. The steps are as follows:

(1)   Determine whether individual has a disability.

(2)   Determine the essential functions of the job.

(3)   Identify the abilities and limitations of the individual.

(4)   Identify potential accommodations.

(5)   Determine the reasonableness of the accommodations and select options.

Each step is discussed in detail in subchapter 22.

Remember that the interactive process may require you to consult and work with a number of different people, including the individual, medical and safety personnel, human resources and rehabilitation specialists, and supervisors and managers.

The five-step interactive process is not required if it is definitively clear an individual is not a qualified individual with a disability, i.e., temporary condition such as pregnancy or a broken leg (see section 141.3).

# 22   The Interactive Process

## 221   Step One:  Determine Whether Individual Has a Disability

The Postal Service is entitled to know that an employee or applicant has a covered disability that requires a reasonable accommodation. Consider the following questions:

■     What exactly is the impairment?

■     Does the impairment render the individual unable to perform a major life activity?

■     Does the impairment substantially limit the performance of a major life activity as compared to the average person's performance of that activity?

A qualified person with a disability must also meet minimum qualifications for the job. Being minimally qualified includes meeting the requisite license, required examination(s), skills, experience, education requirements, and other job-related requirements for the position. At this first step, consider whether the individual has met the minimum qualifications for the job at issue.

**Note:** A person with a disability may also require reasonable accommodation in exams and/or training needed to meet job prerequisites (see chapter 3).

If you have determined that the individual has a covered disability and is minimally qualified, proceed with steps 2 through 5 to determine whether he/she is able to perform the essential functions of the position, with or without accommodation, and what accommodation, if any, is appropriate. Informal dialogue with the individual to obtain relevant information is encouraged (at all steps) and may be necessary to make an informed decision.

Contact your local manager of Human Resources or manager of Equal Employment Opportunity when you need help with making this determination. Alternatively, many districts and areas have Reasonable Accommodation Committees that can assist you in this step or with the entire decision-making process.

## 222    Step Two:  Determine the Essential Functions of the Job

The term "essential functions" is defined as the fundamental job duties of the position the individual with a disability holds or desires and is exclusive of the marginal functions of the position.

A job function may be considered essential for several reasons, including but not limited to, the following:

- The function may be essential because the position exists to perform that function.
- The function may be essential because of the limited number of employees available to whom the performance of the job function can be distributed.
- The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

Evidence of whether a particular function is essential includes, but is not limited to, the following:

- The employer's judgment regarding a determination as to which functions are essential.
- Written job descriptions.
- The amount of time spent performing the function.
- The consequences of not requiring the incumbent to perform the function.
- The terms of a collective bargaining agreement.
- The work experience of past incumbents in the job.
- The current work experience of incumbents in a similar job.
- Actual duties performed by a person holding the job.

The essential functions of the job are determined on a case-by-case basis. Do not presume that any two Postal Service jobs are necessarily alike. The actual responsibilities of a mail handler may vary depending on the tour, operation, mail volume, and the age and configuration of the facility. Similarly, the actual functions for a postmaster in a level 13 Post Office™ will differ from the functions for a postmaster in a level 20 Post Office.

Job descriptions, job preview videos, and job announcements can assist you in determining the essential functions of the job. However, these may only generically describe the requirements of the job. It may be necessary to interact with others to ascertain beyond written descriptions the actual essential functions of the particular job in your facility.

## 223   Step Three:  Identify the Abilities and Limitations of the Individual

The next step in the interactive process is to determine the physical and mental abilities of the employee or job applicant. Of course, the individual is best able to tell you what he or she can do and cannot do. Therefore, discuss the job with the individual, including the nature of the job, the essential functions the individual is expected to perform, and the manner in which the essential functions are usually performed.

### 223.1   Gaining the Individual's Participation

Gaining the individual's participation is a key part of the process — that's what makes it interactive. The following are examples of questions that, as appropriate, may be modified and used to gain the individual's participation in the reasonable accommodation process:

- At the present time, the essential functions are performed in this manner. Can you tell us or show us how you can achieve the same results?

- This equipment is used on a regular basis in this manner. Can you show us how you would use it to complete required tasks?

- Historically, this job has been done using this sequence and method. Do you feel you could accomplish the same results in this or in another way?

- This is the normal arrangement of the work area. Do you have any suggestions regarding changes or modifications that may be necessary to enable you to perform the job?

### 223.2   Documentation

In some cases, further documentation may be required to provide more information about the disability and its effects and job restrictions, and to clarify how the requested accommodation will assist the employee to perform essential functions of the job.

When a disability and/or need for accommodation is not obvious or otherwise already known, reasonable documentation may be required to support the existence of a disability and the need for the accommodation requested. This

documentation must come from an appropriate professional to explain the nature of the disability and the need for reasonable accommodation, or to clarify how the requested accommodation will assist the employee to perform the essential functions of the job.

If the information provided is not sufficient to substantiate that the individual has a disability and/or needs the reasonable accommodation requested, supplemental medical information may be required including, if appropriate, examination by a medical specialist of the Postal Service's choosing and at the expense of the Postal Service.

A medical expert of the Postal Service's choosing and at the expense of the Postal Service may also review the medical information submitted to support a request for reasonable accommodation.

Medical information obtained in connection with the reasonable accommodation process must be kept confidential and retained in the official medical file. Supervisors and managers who need to know the information to perform their responsibilities may be told about the necessary medical restrictions or the need for accommodations, but medical information should be disclosed only when necessary.

### 223.3   Defining Abilities and Limitations — Job Applicants

Only after making a conditional job offer to an applicant should a medical assessment be scheduled to assist you in defining an applicant's abilities and limitations. The applicant's physician or Postal Service medical personnel may not necessarily know all the functions of a particular job. Accordingly, you should verify with medical personnel that their assessment is based on a complete understanding of the functions of the job. Then ask the job applicant what he or she thinks is needed to enable him or her to perform the job. Alternatively, many districts and areas have Reasonable Accommodation Committees to whom you may refer a decision on accommodating an applicant. Other important sources of information that will assist you in making your individualized determination for the applicant include past medical records, current medical exams, and work history.

Do not make medical inquiries or schedule medical assessments before making a conditional job offer!

### 223.4   Defining Abilities and Limitations — Employees

For employees requesting reasonable accommodation, consider medical information that their physicians may provide to determine job-related limitations and how they could be overcome. Ask the employee what he or she thinks is needed to enable him or her to perform the job. Alternatively, many districts and areas have Reasonable Accommodation Committees to whom you may refer a decision on accommodating an employee. Other important sources of information that will assist you in defining the employee's abilities and limitations include past medical records, current medical examinations, and work history. It may be necessary to schedule a medical evaluation to obtain a better understanding of the employee's abilities and limitations.

## 224  Step Four:  Identify Potential Accommodations

Once you have identified essential functions of the job as well as the individual's abilities and limitations, you are then in a position to determine the following:

- Whether the person can perform the essential functions of the job.
- Whether accommodations can be made to enable the individual to perform the essential functions of the job.

Consult with a number of people to identify potential accommodations. First, you should ascertain from the job applicant or employee what he or she thinks is needed to enable him or her to perform the job. Second, you will need to consult with operations, safety and/or medical personnel, as appropriate, to determine whether the employee's proposed accommodation is feasible and whether other accommodations can be made. You may offer alternative suggestions for reasonable accommodations and discuss their effectiveness in removing the workplace barrier that is impeding the individual. Many districts and areas have Reasonable Accommodation Committees with whom you can consult. You may also want to seek guidance from people outside the Postal Service to identify potential accommodations, particularly state agencies and nonprofit organizations dedicated to assisting people with disabilities in the workplace. As an example, the national Job Accommodation Network (JAN) at 800-232-9675 can provide information, free of charge, about many types of reasonable accommodation.

## 225  Step Five:  Determine the Reasonableness of the Accommodations and Select Options

Once potential accommodations are identified, it is your responsibility to determine whether the potential accommodations are reasonable. Consider whether the proposed accommodation would:

- Eliminate or alter the essential functions of the job.
- Impose an undue hardship on the Postal Service.
- Violate the seniority provisions of a collective bargaining agreement.
- Fail to eliminate or reduce the direct threat of harm.

Consider the individual's preferences and the effectiveness of each accommodation and its cost. Select the accommodation most appropriate for both you and the individual. The chosen accommodation need not be the best or most expensive, or even the one preferred by the individual. As long as the accommodation is reasonable and enables the individual to perform the essential functions, it is acceptable. The employer makes the ultimate decision as to what accommodations, if any, shall be adopted.

### 225.1  Altering the Essential Functions of the Job

Sometimes an accommodation involves a job restructuring or altering the nonessential requirements of a particular job. The law, however, does not require the Postal Service to change or alter the essential functions of a job. For example, an essential function of a postal police officer at a particular

location is the ability to read identification cards. It would be unreasonable for an applicant with a visual impairment to demand that the Postal Service hire a reader to assist him or her so that the cards can be read. Under the law, the employer is not required to reallocate the essential functions of the job to another individual. In this case, reading is an essential function. If reading were only a minor or unimportant aspect of the job, some form of accommodation would be in order.

## 225.2 Identifying Undue Hardship

Accommodations that would impose an undue hardship on the Postal Service are not required. Undue hardship in this context means a significant difficulty or expense in providing the accommodation.

Factors, among others, to consider in determining whether an undue financial hardship exists are the following:

- The nature and cost of the accommodation.
- The overall financial resources of the facility.
- The number and composition of the workforce at the facility.
- The effect on expenses and resources.

An accommodation can also impose an undue hardship when it alters the fundamental nature of the business or operations. Factors to consider in this context include the following:

- Type of operations conducted.
- Composition and functions of the workforce.
- Geographic separateness and administrative or fiscal relationship of the facility to the Postal Service.
- Impact on the operations of the facility, specifically compliance with safety rules and policies.
- Impact on other employees' abilities to perform their jobs.
- Impact on the facility's capability to conduct business.

There must be a strong fact-based analysis underlying the undue hardship determination. Generalizations or speculation about the effects of accommodations are not acceptable.

## 225.3 Determining the Impact on Collective Bargaining Agreements

The Postal Service is not required to adopt an accommodation that would violate the seniority provisions of a collective bargaining agreement. Consult your area law office when the requested accommodation conflicts with seniority provisions. Similarly, if the accommodation involves a job restructuring, job reassignment, or work schedule modification, you must determine whether the proposed accommodation would violate the terms of a collective bargaining agreement and, if so, consult with your area law office.

### 225.4  Minimizing Safety Hazards

In some situations, the disability of a job applicant or an employee may subject the employee, applicant, or others to a direct threat of harm. You must determine whether the accommodation would minimize the risk of harm to an acceptable level. If no accommodation can adequately minimize or eliminate the risk, then the employer can deny employment to the job applicant or take other appropriate action concerning the employee. Of course, before concluding that a person poses a direct threat of harm with or without reasonable accommodation, you should verify that your conclusion is based on recognized scientific and medical data and an individualized determination of the situation and the individual in question (see part 146).

## 23  Accessibility of Facilities

The Postal Service's policy, as prescribed by federal law, is to provide accessibility for all individuals with disabilities, employed or to be employed, by making any required alterations to specific buildings where they work. Detailed guidance on facility accessibility for individuals with disabilities is contained in Postal Service Handbook RE-4, *Standards for Facility Accessibility by the Physically Handicapped.*

## 24  Time Frames for Processing Requests for Reasonable Accommodation

The time necessary to process a request depends on the nature of the accommodation needed and whether it is necessary to obtain substantiating information regarding the impairment of the individual and/or the need for accommodation. In all instances, requests for accommodation should be processed and provided as promptly as possible given the facts and circumstances. When the need for accommodation is clear, the requested accommodation is simple and straightforward, and no extenuating circumstances apply, you should provide the decision as soon as possible but no later than 20 business days from the date of the request (business days are Monday through Friday, excluding federal holidays).

Expedited processing may be necessary where:

- The reasonable accommodation process is needed to enable an individual to apply for a job (for example, an applicant with a permanent disability resulting from a back injury requests a special chair with back support for his scheduled typing performance test).
- The accommodation is needed for a special activity that is scheduled to occur shortly (for example, an employee who is hearing impaired is selected to participate in a focus group and requests an interpreter).
- An employee with a known disability has a recurring, predictable need for accommodation (for example, sign language interpreter or large print).

When a disability and/or need for reasonable accommodation is not obvious or otherwise known, the employee or applicant may be required to provide documentation. This documentation should be requested promptly and must come from an appropriate professional to explain the nature of the disability, the need for reasonable accommodation, or to clarify how the requested accommodation will assist the employee to perform the essential functions of the job. If medical information is necessary, you should make your decision within 20 business days from the date you receive the completed documentation, absent extenuating circumstances. When extenuating circumstances are present, the time for processing a request for reasonable accommodation will be extended as necessary. You must notify the individual of the reason for delay, the approximate date on which a decision is expected, and whether there are temporary measures that could be taken to assist the individual. You should also communicate further developments or changes to the individual.

Extenuating circumstances are limited situations in which unforeseen or unavoidable events prevent the prompt processing of a request or of providing accommodation. The following are examples of extenuating circumstances:

- The purchase of equipment may take longer than 20 business days.
- The employee with a disability needs to try working with equipment on a trial basis to ensure that it is effective before the Postal Service buys it.
- A medical expert is evaluating medical information provided by the individual.
- Additional medical information is necessary in order to determine whether a disability exists or if an accommodation is feasible, including where appropriate, examination by a specialist.

# 25   Denying a Requested Accommodation

If you deny an individual's request for accommodation, as soon as possible, you must notify the individual in writing of the denial (see subchapter 24 for time frames for processing requests). The denial must be in writing and should be written in plain and specific language and should identify the reasons for denial and the name of the person or office that made the decision.

## 251   Reasons for Denial

Reasons for the denial of a request for an accommodation may include the following:

- The applicant or employee is not a qualified individual with a disability.
- Medical documentation is inadequate to establish that the individual has a disability and/or needs a reasonable accommodation.
- The requested accommodation would not be effective.

- The requested accommodation requires elimination of essential functions.
- The requested accommodation would violate seniority provisions of a collective bargaining agreement (see section 225.3).
- The requested accommodation would result in an undue hardship.
- The requested accommodation would not adequately eliminate or minimize the risk of harm to an acceptable level.
- The requested accommodation would require unsuitable changes to vehicles, vehicle assignments, or automated mail processing machines (see subchapter 54).
- The requested accommodation was denied and alternative accommodations considered were ineffective.

All denial letters to qualified employees with a disability(ies) must notify the individual of his or her right to file an equal employment opportunity (EEO) complaint and any other appeal rights to which the employee or applicant may be entitled. The notice should also describe procedures that may be available for informal dispute resolution (see sample letters, Exhibits 2-3 and 2-4).

## 252  Informal Dispute Resolution

The objective of any informal dispute resolution process is to permit quick and thorough reconsideration of a denial.

Individuals with disabilities may appeal the decision that denies their request for reasonable accommodation within 10 business days of the denial. Advise the individual of his or her right to seek reconsideration from either the next person in your chain of command, the manager of Human Resources, or the Reasonable Accommodation Committee, as appropriate. The individual may furnish additional information to support the request. Such requests for reconsideration also should receive thorough review and a response within 10 business days unless additional medical review requires additional time. If the denial is not reversed, the individual should be advised of the decision and the basis for it. He or she should also be advised of any other appeals that they have, including the right to file an EEO complaint.

# 26   Record Keeping

## 261  Completing the *Reasonable Accommodation Decision Guide*

Complete the form *Reasonable Accommodation Decision Guide* (see Exhibit 2-2) to document decision making upon activation of the reasonable accommodation process. Use of the form will also assist decision makers conducting an interactive meeting with an applicant or employee who has requested reasonable accommodation. This form is not required:

- To document a recurring job accommodation need for a specific employee.
- For documentation of job modifications made for persons who have medical restrictions but are not disabled within the meaning of the Rehabilitation Act.
- To document the process by which accommodations costing $0 to $200 are provided for an applicant/employee.

Written documentation, such as the request for reasonable accommodation, *Confirmation of Request for Reasonable Accommodation, Essential Functions Worksheet,* memos, notes, and other related information should be attached to the *Reasonable Accommodation Decision Guide.*

Forward any medical documentation to the office responsible for retention of the employee's Official Medical Folder, and forward the *Reasonable Accommodation Decision Guide* for retention to the local district manager of Human Resources or designee.

## 262 Filing the *Reasonable Accommodation Decision Guide*

Retain the *Reasonable Accommodation Decision Guide* for the duration of the employee's tenure with the Postal Service or until any appeals are adjudicated, whichever is longer. Upon request, the form may be provided for review by personnel who require the information and have a need to know.

This page intentionally left blank

The Reasonable Accommodation Process

Exhibit 2-1 (p. 1)
**U.S. Postal Service Confirmation of Request for Reasonable Accommodation**

---

### U.S. Postal Service Confirmation of Request for Reasonable Accommodation

1.  Identifying Information

Name _____     Date of Request _____

If Applicant: _____
              Street, City, State, Zip Code

_____
Telephone Number

If Employee: _____
             Name/Address of Employing Facility

_____
Position                              Pay Location, Work Schedule, NS Days

---

2.  Accommodation Requested
    (Be as specific as possible, e.g., adaptive equipment, reader, interpreter.)

---

Handbook EL-307, September 2003

**21**

Exhibit 2-1 (p. 2)
**U.S. Postal Service Confirmation of Request for Reasonable Accommodation**

---

### U.S. Postal Service Confirmation of Request for Reasonable Accommodation (p.2)

3. Reason for Request

 A. Nature of Impairment:

 B. Major Life Activity Affected:

 C. Extent or Degree of Limitation to Major Life Activity:

 D. Mitigating Devices/Drugs:

 E. Essential Functions Requiring Accommodation(s):

---

4. If accommodation is time sensitive, please explain:

---

*Supervisor, manager, examiner, or selecting official:* *Use this form to document a verbal request for reasonable accommodation from an applicant or employee. You may also ask the applicant or employee to furnish their request in writing along with appropriate substantiating documentation, if necessary. Refer to Handbook EL-307 and complete a Reasonable Accommodation Decision Guide to document decision making related to this request.*

*Applicant:* *Return form to the examination administration office, selecting official, or local manager of Human Resources.*

*Employee:* *Give this form to your supervisor, manager, or any other management official whom you reasonably believe has authority to implement a reasonable accommodation.*

---

**Privacy Act Statement:** The collection of this information is authorized by 29 USC 791 et seq. This information will be used to process a request for reasonable accommodation. As a routine use, the information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to USPS decision(s) concerning reasonable accommodation, to a congressional office in order to obtain information relevant to USPS decision(s) concerning reasonable accommodation, to an expert, consultant or other person under contract with the USPS to fulfill an agency function, to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; to a labor organization as required by the National Labor Relations Act; to the Office of Personnel Management in making determinations related to disability retirement and benefit entitlement; to officials of the Office of Workers' Compensation Programs; Department of Veterans Affairs; to an employee's private treating physician and to medical personnel retained by the USPS to provide medical services in connection with an employee's health or physical condition related to employment; and to the Occupational Safety and Health Administration and the National Institute of Occupational Safety and Health when needed by that organization to perform its duties under 29 CFR Part 1910. Completion of this form is voluntary. If this information is not provided, processing the request for reasonable accommodation may not be possible.

The Reasonable Accommodation Process

Exhibit 2-2 (p. 1)
**U.S. Postal Service Reasonable Accommodation Decision Guide**

---

### U.S. Postal Service Reasonable Accommodation Decision Guide

*This form is required to document decision-making upon activation of the reasonable accommodation process. This form will also serve as a guide for decision makers conducting an interactive meeting with an applicant/employee who requests reasonable accommodation. This form is not required:*

- *To document a recurring job accommodation need for a specific employee.*
- *For documentation of job modifications made for persons who have medical restrictions but are not disabled within the meaning of the Rehabilitation Act.*
- *To document the process by which accommodations costing $0 to $200 are provided for an applicant/employee.*

_____          _____
**Applicant/Employee Name**                              **Title of Job Held or Job Sought**

---

**Reason for activating the reasonable accommodation process:**

____ Employee requests reasonable accommodation for current job.

____ Employee requests reasonable accommodation for desired job and/or exam/interview/training.

____ Employee with known disability is observed having difficulty performing essential functions because of disability.

____ Applicant requests reasonable accommodation for a component of selection process (e.g., exam, interview, training).

____ Applicant's medical assessment indicates he/she may be a person with a disability.

____ Applicant/Employee requests reasonable accommodation for equal employment opportunities (e.g., removing physical barriers in a break room).

____ Other.

---

**Step 1.** Determine whether applicant/employee has a disability. Is documentation required to substantiate that the employee has a disability?

____ Yes. (Supply date that employee was informed that documentation is required to support what the impairment is and how impairment substantially limits a major life activity.) Date: _____

____ No. (How do you know that employee has an impairment that substantially limits a major life activity?)*

If impairment is obvious or substantiating documentation is already on file, medical documentation is not required.

Impairment: _____

Limitation(s) on major life activity: _____

*Proceed with interactive meeting if it is determined that applicant/employee has a disability that requires reasonable accommodation. Skip to Step 5 if applicant/employee does not have a disability.*

---

Date Reasonable Accommodation process activated: _____

Date interactive meeting scheduled/held with individual: _____

---

*Meeting Guide – Steps 2 through 4 for processing reasonable accommodation requests are to be considered and discussed during an interactive meeting. The final step may happen later.*

List names of all persons present during interactive meeting:

**Step 2.** Identify and discuss essential functions of job or desired job (list them here or attach copy of completed *Essential Functions Worksheet*):

Job title:

Essential functions:

---

Handbook EL-307, September 2003                                                                 **23**

Exhibit 2-2 (p. 2)
**U.S. Postal Service Reasonable Accommodation Decision Guide**

---

### U.S. Postal Service Reasonable Accommodation Decision Guide (p.2)

**Step 3.** Ask individual to identify his/her functional limitations/work restrictions as they apply to his/her current position or position sought.

**Step 4.** Ask individual what he/she needs to perform the job. Is a specific accommodation requested to enable performance of the job? [___ Check here if individual was asked for suggestions but had none.]

Are there other accommodations that would enable individual to perform job? (Possible sources of assistance to identify possible reasonable accommodations are: other supervisors/managers, medical personnel, safety specialists, Human Resources personnel, national Job Accommodation Network.)

If the individual is clearly a qualified employee with a disability and no accommodations have been identified that would permit performance of his/her job, then reassignment to another job (not necessarily in same installation) may be a reasonable accommodation. This does not apply for job applicants. Discuss other jobs at same or lower level and explore whether another job(s) might need to be considered. [*Note:* the employee must meet qualifications for the other job including any examination or performance tests and be able to perform the essential functions with or without accommodation.]

**Step 5:** (check one)

___ **Accommodation provided**

    Describe accommodation provided:

    _____

    Date accommodation provided: _____

    Approximate cost of accommodation: $_____

___ **Accommodation denied** (Attach copy of denial letter)

___ **No effective accommodation identified**

_____    _____
**Signature of official completing this Decision Guide**          **Date**

_____    _____    _____
**Printed Name**                         **Office Location**                        **Phone Number**

---

**Privacy Act Statement:** The collection of this information is authorized by 29 USC 791 et seq. This information will be used to process a request for reasonable accommodation. As a routine use, the information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to USPS decision(s) concerning reasonable accommodation, to a congressional office in order to obtain information relevant to USPS decision(s) concerning reasonable accommodation, to an expert, consultant or other person under contract with the USPS to fulfill an agency function, to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; to a labor organization as required by the National Labor Relations Act; to the Office of Personnel Management in making determinations related to disability retirement and benefit entitlement; to officials of the Office of Workers' Compensation Programs; Department of Veterans Affairs; to an employee's private treating physician and to medical personnel retained by the USPS to provide medical services in connection with an employee's health or physical condition related to employment; and to the Occupational Safety and Health Administration and the National Institute of Occupational Safety and Health when needed by that organization to perform its duties under 29 CFR Part 1910.

*Separate the medical documentation from this form and forward for retention in official medical file. Forward this Decision Guide, along with request for reasonable accommodation/confirmation of request for reasonable accommodation, essential functions worksheet, if any, and any related notes, memos and correspondence to local manager of Human Resources or designee for retention.*

The Reasonable Accommodation Process

Exhibit 2-3
**Denial Letter — Not protected under Rehabilitation Act**

---

**Sample Denial Letter — Not protected under Rehabilitation Act**

Date:

[Employee Name]

[Address]

This letter responds to your request for accommodation.

The purpose of reasonable accommodation is to enable qualified individuals with disabilities to perform the essential functions of a particular job. You requested [insert type of accommodation requested].

Your request is denied because [insert reason, e.g., your diabetes is adequately controlled by medication, which does not cause side effects that substantially limit you in a major life activity. Therefore, you are not a qualified individual with a disability within the meaning of the Rehabilitation Act].

The Rehabilitation Act defines a qualified person with a disability as one who has a physical or mental impairment that substantially limits a major life activity. An impairment substantially limits a major life activity when it either renders an individual unable to perform it, or substantially restricts his or her performance when compared to the average person's performance of the same activity.

You are encouraged to explore employment options (bidding, reassignment, transfer) that will provide the change you seek. Please let me know how I can assist you.

[Signature]

[Typed Name of Decision Maker]

---

Exhibit 2-4
**Denial Letter — For Qualified Person with a Disability, Including Appeal Rights**

---

**Sample Denial Letter — For Qualified Person with a Disability, Including Appeal Rights**

Date:

[Employee Name]

[Address]

This letter responds to your request for accommodation.

The purpose of reasonable accommodation is to enable qualified individuals with disabilities to perform the essential functions of a particular job. You requested [insert type of accommodation requested].

Your request is denied because [insert reason and alternative accommodations considered, e.g., the accommodation you requested would eliminate an essential function of the job. Despite our efforts in interactive meetings with representatives from the Health Unit, Safety Office and Personnel Services, other alternatives explored were equally unsuccessful.]

You may appeal this denial within 10 business days by making a written request for reconsideration. Additional information to support your request may be provided. You will be notified in writing of the decision by [insert the next person in your chain of command, the manager, Human Resources, or Reasonable Accommodation Committee, as appropriate].

[Insert a description of procedures that are available for informal dispute resolution].

Whether you participate in informal dispute resolution as described above, you have the right to file an EEO complaint pursuant to 29 C.F.R. 1614. In order to do so, you must contact a Dispute Resolution Specialist within 45 days from the date of the notice of denial of reasonable accommodation.

[Signature]

[Typed Name of Decision Maker]

---

# 3 Reasonable Accommodation in the Examination Process

## 31 Special Needs of Test Applicants

Postal Service applicants and employees with disabilities may seek accommodations in order to take an examination. For convenience, the term applicant is used throughout this chapter to refer to any individual, including Postal Service employees, taking any type of Postal Service examination.

Most of the hundreds of thousands of job applicants and current employees taking various Postal Service examinations annually do not need accommodation in the testing process. However, for some qualified individuals with disabilities, the examination may serve as an artificial barrier to the demonstration of the knowledge, skills, and abilities required for performance of the essential functions of the job. In these instances, the Postal Service endeavors to provide reasonable accommodation to qualified individuals with disabilities to enable participation in the competitive examination process.

Accommodations must be considered on a case-by-case basis. When the Postal Service becomes aware of an applicant's disability, flexible interactive dialogue with the applicant must be pursued to ensure compliance with applicable statutes and to fulfill the Postal Service's commitment to ensuring equal employment opportunity regardless of disability.

Some routine activities that may require additional time and special attention include issuing test materials, giving instructions, and answering questions. Special attention is required for applicants with assistive animals (e.g., guide dogs) to provide for the physical needs of the animals.

## 32 Postal Service Examination Policy for Applicants With Disabilities

Examinations include all written, oral, performance, and other tests.

Consistent with applicable statutes and its own policy of providing equal employment opportunity, the Postal Service will provide reasonable accommodation in examinations for the known disabilities of qualified

individuals when such assistance is requested and to the extent the accommodation does not impose an undue hardship on the Postal Service.

Such accommodation is provided on a case-by-case basis and determined by field office staff responsible for conducting the examination.

This policy provides a framework for those individuals who must make decisions concerning reasonable accommodation in the testing process for applicants with disabilities. This framework takes into account the nature and severity of the disability, the type of examination or selection process being administered, and the resources available to the local Postal Service hiring or examination office.

This policy is tempered in each situation by the specific needs of the applicant with a disability, the essential functions of the job applied for, the nature and purpose of the test or selection procedure, and the limitations of local resources.

Postal Service policy is to treat all applicants fairly and equitably. If a disability would reduce an applicant's opportunity to demonstrate that he or she possesses the knowledge, skills, and abilities needed to perform the essential functions of the job sought, and the applicant makes it known that assistance is needed, the Postal Service will endeavor to make reasonable accommodation. Accommodation that would impose an undue hardship on Postal Service operations will not be provided.

## 321  Maintaining the Competitive Nature of the Examination

Examinations are given to measure job-related knowledge, skills, and abilities. One use of test scores is to compare the performance of individual competitors for purposes of making employment decisions. Care must be taken to ensure that accommodations do not affect an individual's score to the extent that it cannot be compared meaningfully to the scores of other competitors. Therefore, any proposed accommodations or changes in the testing process that may affect the meaning or interpretation of test scores must be approved by the Headquarters manager of Selection, Evaluation and Recognition. This ensures that the competitive nature of the selection process and the validity of the test are not compromised.

## 322  Preserving the Examination's Effectiveness as a Measurement Tool

Tests and other selection procedures are designed to measure the knowledge, skills, or abilities needed to learn or perform a job. Therefore, if the proposed accommodation fundamentally alters what is being assessed, the test or method of administration will not be changed. This is provided for in 29 CFR 1630 as follows: "This provision does not apply to employment tests that require the use of sensory, manual, or speaking skills where the tests are intended to measure those skills. Thus, an employer could require that an applicant with dyslexia take a written test for a particular job if the ability to read is the skill the test is designed to measure. Similarly, an

employer could require that an applicant complete a test within established time frames if speed were one of the skills for which the applicant was being tested."

For example, time extensions are frequently proposed as testing accommodations. To the extent that the test is intended to measure speed of performance, the allowance of more time is not appropriate. Such an accommodation would render the test score useless as an indicator of true ability when compared to the scores of those who took the test under stricter time limits.

# 33    Determination of Reasonable Accommodation for Applicants With Disabilities

Accommodations must be determined on a case-by-case basis. Therefore, an approved or recommended accommodation is applicable in that case only and additional requests from other person, however similar, must be considered separately.

Because individuals with disabilities (even those with the same type of disability) can, and often do, differ greatly in their needs and capabilities, any attempt to list all the different types of reasonable accommodations that might conceivably be developed for each type of mental or physical disability would be futile. Each request must be considered on a case-by-case basis and evaluated on its own merits. Examples of accommodations are listed in section 332.12 that may prove helpful.

Whether the accommodation is determined locally or in consultation with Headquarters, the process is the same. The process involves interacting with the applicant to obtain the information needed for a reasonable and appropriate decision.

The primary concern in determining the appropriateness of a modified test administration is whether the proposed change compromises the accurate assessment of an applicant's job skills or abilities. The goal is to provide applicants with disabilities an equal opportunity to demonstrate their qualifications without undermining the validity or competitive equity of the testing process.

## 331   Applicant Responsibilities

## 331.1   Requesting a Reasonable Accommodation for Examinations

An applicant who needs an adjustment to or change in the testing process because of limitations caused by a disability should request such accommodation immediately upon being scheduled for a testing session. Requests can be made to the examiner, selecting official, or local manager of Human Resources.

Applicants are responsible for making a request for accommodation as soon as the need for accommodation is known. The reasonable accommodation process is activated whenever the employee or applicant, or someone acting on the individual's behalf, makes a request for reasonable accommodation, orally or in writing.

In order to determine whether such a request is appropriate, documentation of the need for accommodation is required. Applicants must provide relevant, specific information as to the nature and severity of the disability or impairment. Sufficient information may depend on the type of disability. Some physical disabilities, for example, are far more obvious than learning disabilities. Applicants need to be guided concerning the necessary documentation (see section 223.2). Relevant documentation may include:

- Information on how the disability or impairment would affect performance on the examination (i.e., the specific test behaviors affected by the disability).
- The specific accommodation the applicant is requesting.
- Current documentation supporting the existence of a disability from a bona fide expert source (e.g., licensed professional, state department of rehabilitation, approved agency).

Applicants must provide additional information upon request when that information is needed to determine whether a disability exists for which accommodation is required or to determine an appropriate accommodation. Responses to requests for accommodation may be delayed if applicants fail to provide the required information in a timely manner.

## 332  Postal Service Responsibilities

The Postal Service is responsible for ensuring the competitive nature and validity of the selection process while at the same time providing reasonable accommodation to qualified applicants with known disabilities when such accommodation is requested.

Examiners or local Human Resources staff should include the following instructions in the test scheduling package to explain to applicants the procedure to use to request testing accommodation: "FOR PERSONS WITH DISABILITIES: If you have a disability that will require a special testing arrangement, please make your request orally or in writing to the examiner at the examination administrative office listed on page 1 as soon as possible. Specify the nature of the disability and the accommodation needed. Supporting documentation to verify the existence of a protected disability or the need for accommodation may be required. Include the date and time for which you are scheduled to take the exam. Requests for testing accommodation not made well in advance may result in the postponement of your scheduled exam."

Include the following additional information in the scheduling package for all individuals:

- A contact telephone number and address to answer general exam inquiries.

- A contact telephone number and address to make requests for testing accommodation. It is strongly recommended that you also provide a TTY number for the deaf or hard of hearing to communicate questions or concerns.

Any person who accepts applications or has contact with applicants must be able to recognize requests for accommodations. An applicant does not have to use any special words such as "reasonable accommodation" or "Rehabilitation Act." Refer applicants requesting reasonable accommodation to the examiner or person responsible for the examination or selection process.

Throughout this process, the Postal Service must engage in an interactive process to clarify what the applicant needs and identify an appropriate reasonable accommodation.

In cases where the competitive nature and validity of the test are not likely to be affected (e.g., site accessibility), the examiner or local Human Resources staff member works out what accommodation, if any, to provide. When there is a question as to whether providing a requested accommodation would preclude the valid assessment of the applicant's qualifications, the examiner or local Human Resources staff member must forward the request to the manager of Selection, Evaluation, and Recognition for final determination at Headquarters.

Once the examiner or local Human Resources staff member has become aware of an applicant's desire for a testing accommodation, he/she should:

- Contact the applicant to discuss the testing process and the job(s) to ensure that the applicant is familiar with what is required.

- Obtain any needed additional documentation from the applicant regarding the disability and the need for accommodation.

- Determine if an accommodation can be provided without further consultation (i.e., the accommodation would not affect the competitive nature or validity of the examination).

- If accommodation is feasible, offer it to the applicant.

- Note the accommodation provided on the Time Record Sheet when examination is administered.

- If an accommodation cannot be determined locally, submit all requisite documentation to the manager of Selection, Evaluation, and Recognition at Headquarters. Upon receipt of a response from the manager of Selection, Evaluation, and Recognition, offer a recommended accommodation (if any) to the applicant and submit approval (Authorization to Modify Test Administration) with the Time Record Sheet when the examination is given.

- If the applicant does not accept the accommodations that can be provided, document the rejection and the reasons for the rejection.

- If reasonable accommodation is possible but the Postal Service cannot provide that accommodation on the regularly scheduled test date, schedule the applicant for an alternate test date as soon as practicable.
- Ensure that appropriate arrangements are made to provide the needed accommodation, for example, provide a table for a wheelchair applicant rather than a student desk.

See Exhibit 3-1 for detailed information on possible testing accommodations for deaf or hard of hearing applicants.

## 332.1 Accommodations That Do Not Affect Competitive Nature or Validity of the Selection Process

Some accommodations may be made locally without further consultation if they do not affect the competitive nature or validity of the selection process. Examples of accommodations that can usually be made locally without prior approval from the manager of Selection, Evaluation and Recognition are described in sections 332.11 and 332.12.

## 332.11 Accessibility Accommodations of Testing Site

Any request for accommodation involving accessibility of the testing site should be addressed locally. This includes, but is not limited to, access to the Postal Service activity or operation as provided by law, assistance inside the testing site, etc. It also includes providing alternative seating arrangements as needed (e.g., an individual in a wheelchair may need to be seated at a table rather than at a student desk). In some cases, it may be necessary to schedule a separate session to ensure that applicants are tested in an accessible site.

## 332.12 Other Testing Accommodations

The following are other types of accommodations that may be provided at the local level without further consultation with Headquarters.

Any accommodation provided must be documented on the Time Record Sheet consistent with the Directions for Conducting (DFC).

- Alternate test dates.
- Individual sessions.
- Individual monitors.
- Frequent breaks (between test parts only).
- Special lighting.
- Special seating arrangements.
- Sign language interpreter (additional detailed information regarding possible testing accommodations for deaf or hard-of-hearing persons is provided in Exhibit 3-1).
- Miscellaneous personal assistance (e.g., turning pages, marking answers).

Implementation of any one or a combination of these measures may be appropriate for individual applicants depending on their needs, the nature of the selection procedures or examination material used, and the essential functions of the job sought. If the requested accommodation is not on the above list, see section 332.2.

### 332.2 Accommodations That May Affect the Competitive Nature or Validity of the Selection Process

A proposed accommodation that may affect the competitive nature or the validity of the selection process must be reviewed and approved by the manager of Selection, Evaluation, and Recognition. This includes any deviation from standardized testing procedures prescribed in the examination DFC.

In circumstances where there is a question about whether providing a proposed accommodation would interfere with the valid assessment of the applicant, the examiner or local Human Resources staff member should submit a request for accommodation in writing to the manager of Selection, Evaluation, and Recognition with the necessary documentation. Documentation should describe the specific accommodation requested and be sufficient to establish that:

- The applicant, in fact, has a disability as defined by federal law.
- The disability interferes with the valid assessment of the knowledge, skills, or abilities covered by the test.
- A diagnosis, if any, is provided by an appropriate professional or expert source.

## 333 Accommodations That May Not Be Reasonable in Examinations

The Postal Service provides reasonable accommodation in examinations to qualified applicants with disabilities except in cases of undue hardship. Undue hardship must be determined on a case-by-case basis (see part 153). The following may constitute an undue hardship with respect to examinations:

- The purchase or rental of specialized equipment or services on a one-time basis for a limited use by a very few applicants at great expense.
- The postponement of announcing or administering an examination to a large number of applicants to accommodate the needs of an applicant with a disability.

  *Note:* This does not prohibit establishing an alternate date for those persons with a disability.

- For employee applicants, any action in violation of seniority provisions of a collective bargaining agreement.

## 334  Other Selection Process Accommodations

Although most requests for accommodation in the Postal Service selection processes involve written tests, it is important to realize that other types of assessment procedures commonly used by the Postal Service may present serious difficulties for certain individuals. Other frequently used examination types and examples of the kinds of accommodation that may be needed are shown in sections 334.1 through 334.4. This listing is not intended to be all-inclusive but only representative of the range of acceptable accommodations, which might be considered in particular situations.

### 334.1  Interviews

Interviews may pose problems for some deaf and hard of hearing individuals and for those with certain kinds of speech challenges. Every effort should be made to determine the communication abilities of these individuals. In addition, it may be appropriate for review committee members to provide a written copy of interview questions to deaf or hard of hearing applicants to read at the point the question is asked in the interview (see Exhibit 3-1). Members should be sure the presented written question does not also contain benchmarks or scoring guidelines.

### 334.2  Performance Tests

The manager of Selection, Evaluation, and Recognition must approve any modifications or adjustments to performance examination material.

Examiners or their designees must consider the physical needs of the applicant with a disability taking performance tests as they do for written tests. Because performance tests generally approximate tasks found on the job, any modification or adjustments to test material or the procedures used to administer these tests must be carefully analyzed before implementation. Only those accommodations that do not compromise the competitive nature and validity of the testing process are considered.

### 334.3  Applications, Supplemental Applications, and Employment Questionnaires

Applicants with disabilities may need assistance when completing applications, experience supplements, or other questionnaires. Human Resources staff must be alerted to the possibility of requests for such assistance and its cooperation solicited.

### 334.4  End-of-Training Examinations

Request for accommodations for end-of-training examinations that cannot be resolved at the local level must be submitted to the manager of Selection, Evaluation, and Recognition, who will coordinate with appropriate functional departments.

Exhibit 3-1 (p. 1)
**Accommodation Options for Testing Individuals Who Are Deaf or Hard of Hearing**

---

### Accommodation Options for Testing Individuals Who Are Deaf or Hard of Hearing

Be familiar with options for test administration to deaf or hard of hearing applicants. The most appropriate accommodation will depend upon several factors, such as whether the individual uses and is fluent in sign language, the accuracy and fluency of speech reading skills, and how much hearing loss the individual has experienced. Most, but not all, test applicants who are deaf probably will need to use a qualified interpreter. American Sign Language (ASL) is a gestural language that has a different vocabulary, syntax, and structure than English. Inasmuch as there are different types of sign language, an individual with a hearing impairment who uses sign language may not use ASL but rather a different sign language; therefore, it is important to keep the effectiveness of the accommodation in mind when arranging for a qualified interpreter.

The first step is to consider the accommodation requested by the individual and, as appropriate, offer the individual the following options:

- Use preferential seating near the examiner so that the test applicant is able to read lips without obstruction.

- Use an interpreter for the administrative instructions portion of the session. If an examination has a following oral instructions subtest, such as Part D on Exam 470 Entrance Battery or Exam 460 Rural Carrier, there are two options: (1) offer the applicant a written version of the "Oral Instructions" subtest, or (2) offer to have an interpreter available to interpret the subtest.

- Offer other accommodations that you and the applicant have determined to be appropriate.

For a person who uses sign language, substituting preferential seating and an opportunity to read the examination instructions and Part D (Exam 470 Entrance Battery and Exam 460 Rural Carrier exams) in lieu of an interpreter most likely will not satisfy our obligation to accommodate an individual who is deaf. For applicants who became deaf at birth or before they used language, reading the test instructions (rather than having the test instructions translated) may not be appropriate. Similarly, providing an interpreter would not be an effective accommodation for an individual who became deaf later in life and never learned sign language.

---

Exhibit 3-1 (p. 2)
**Administering 470 Entrance Battery and 460 Rural Carrier Examinations When Using a Sign Language Interpreter for the Deaf**

---

### Administering 470 Entrance Battery and 460 Rural Carrier Examinations When Using a Sign Language Interpreter for the Deaf

Follow the procedures listed below when testing any applicant who requests an interpreter for the Battery or Rural Carrier Examinations. These procedures are to be reviewed by all individuals, including interpreters, exam administrators, examiners, and examination monitors administering or involved in monitoring an examination during which applicants are using an interpreter:

- Interpreters must possess adequate skills to interpret the examinations. If possible, you should use interpreters who are certified by the Registry for Interpreters for the Deaf, have passed a state quality assurance test, or have a similar certification or qualification.

- The interpreter should be provided up to 2 hours to review the DFC, the Answer Sheet, and Part D of the examination, prior to the examination for the purpose of preparing to interpret.

- The Postal Service will compensate the interpreter for the time spent reviewing. Such review is conducted under the procedures outlined in the DFC covering conditions that ensure security of test materials.

- The examiner is responsible for coordinating with the interpreter a time, date, and place to review the examination material.

- Applicants who are using an interpreter for Part D must be tested in a separate area or room to minimize distraction that may be caused by other applicants leaving the examination.

- For Part D of the examination, the interpreter must wait at each designated pause until every applicant who is using the interpreter indicates that he or she is ready to proceed with the next instruction. The method of determining when the applicants are ready will be decided locally and in consultation with the interpreter. The following suggestions are recommended when an interpreter is used: (1) instruct all applicants to look at the interpreter when they are ready for the next instruction; or (2) instruct all applicants to hold up a green card when they are ready to move on to the next instruction.

- Applicants using an interpreter for Part D are not required to adhere to the same time restrictions as those imposed on other applicants.

**Where to Get Help**

- Requests for an examination time limit change or deviation from the DFC can only be approved by the manager of Selection, Evaluation, and Recognition. You may also wish to use additional resources in your community for more information about accommodating people who are deaf or hard of hearing. These resources include local associations for people who are deaf and adults with loss of hearing, local community colleges with interpreter programs, associations of speech and hearing sciences, state independent living centers or vocational rehabilitation offices, and other national resources, such as the Job Accommodation Network (800-232-9675) and Registry of Interpreters for the Deaf (703-838-0030).

---

# 4 Employment and Placement Procedures

## 41 Policy

It is Postal Service policy to provide equal employment opportunities to qualified applicants with disabilities. This is accomplished through our competitive and noncompetitive hiring processes. A qualified individual with a disability is one who, with or without reasonable accommodation, can perform the essential functions of the job in question without presenting a direct threat to the health and safety of the individual or others. The Postal Service requires the same performance, attendance, and standards of conduct from employees with disabilities as it does from other employees.

## 42 Recruitment

Actively recruiting individuals with targeted disabilities as defined by the EEOC into the workforce promotes the goal of increasing the employment of individuals with disabilities in the federal government and ensures that the federal government continues to serve as a model employer of individuals with disabilities.

Recruitment should include outreach to individuals, organizations, independent living centers, and associations representing individuals with disabilities. Recruitment at universities, colleges, and schools should include outreach to students with disabilities. Recruitment may include, but is not limited to, state Divisions or Departments of Vocational Rehabilitation (DVR), the Department of Veterans Affairs (VA), associations for the deaf, Goodwill Industries, outreach programs for veterans with disabilities, and educational institutions that have a significant number of students who have disabilities.

Advance notice of upcoming examinations should be provided to those organizations so they can identify qualified individuals with disabilities to participate in the competitive process.

# 43 Competitive Selection and Placement of Individuals With Disabilities

It is Postal Service policy to provide equal employment opportunities to qualified applicants with disabilities. This is accomplished through our competitive and noncompetitive hiring processes.

Many applicants with disabilities are qualified to perform the essential functions of jobs without the need for accommodation. However, if an applicant with a disability who is otherwise qualified cannot perform one or more essential job functions because of his or her disability, the Postal Service must consider whether modifications or adjustment are available that would enable the person to perform these functions.

Employers must engage in an interactive process (see subchapter 22) to determine whether the individual in fact has a disability, identify essential functions of the job, the applicant's abilities and limitations, possible accommodations, and the reasonableness of accommodations proposed.

Example — The score of a compensable veteran with service-connected disability was reached on a hiring worksheet for the job of city carrier. His pre-employment eligibility and suitability reviews were favorable. During his interview, he identified a need for accommodation. His left arm had been amputated below the shoulder, but he was very proficient in the use of an artificial arm and hand.

A site visit was arranged where the essential functions and requirements of the job were explained and demonstrated to him. He was encouraged to discuss how he would perform the tasks associated with the job. He then demonstrated that he could perform the essential functions and requirements although with some difficulty. He was extended a conditional job offer and scheduled for a medical assessment.

The medical assessment indicated that an accommodation would be required for his missing left arm and hand. Another meeting was scheduled with the applicant, his prospective supervisor, and a counselor from the local VA Rehabilitation Center to assist in the accommodation efforts.

He again demonstrated his ability to perform job functions and recommended a modification to his prosthetic appliance that would enable him to handle and manipulate the mail for sorting with the required speed, accuracy, and proficiency. The VA counselor agreed to assist in development of the recommended retrofit to the prosthetic device. When the modification to the prosthesis developed and provided by the VA was complete and its safety and effectiveness demonstrated, he received a career appointment as a city carrier.

# 44  Noncompetitive Selection and Placement of Individuals With Disabilities

### 441  Overview

Most employees with disabilities are appointed from a competitive hiring register. However, when the competitive process itself is a barrier to employment for qualified individuals with severe disabilities, and these individuals would be able to perform at or above the normal standards of job performance, a special noncompetitive authority may be used.

Example — A review of the Affirmative Action Program Plan for Individuals with Disabilities by the local manager of Human Resources revealed that individuals with targeted disabilities as defined by the EEOC were underrepresented. The manager scheduled a meeting with the manager of Personnel Services and the Diversity specialist to discuss this issue. New recruitment strategies were discussed to attract more individuals with disabilities when the 470 Battery examination was opened later that year. In addition, the personnel office initiated contact with the state DVR and requested a list of names to fill three vacancies that currently existed at the local Processing and Distribution Center. This was done and resulted in three noncompetitive career mail processing clerk appointments.

To participate in the referral of applicants for noncompetitive hiring consideration, the VA and/or state DVR must have the services and programs they offer certified by the Postal Service. The certification process requires state DVR and VA organizations that wish to participate in this hiring process to submit a certification package to the district manager of Human Resources and to the vice president of Employee Resource Management for review and approval. The package must include the following information:

- Description of the services and programs offered.
- The various screening methods used to identify potential Postal Service applicants.

When the state DVR or VA certification package has been approved, vocational rehabilitation agencies may begin to identify and screen potential Postal Service applicants. The services and programs that vocational rehabilitation agencies and units provide to the Postal Service are essentially an alternative means of assessing applicant qualifications. Therefore, it is critical that all referred applicants receive the most appropriate method of assessment and evaluation to determine that they meet Postal Service selection standards and have the ability to satisfactorily perform as employees. Applicants will be considered to have successfully met the Postal Service's selection requirements as a result of the certification process.

### 442  Job Information for Rehabilitation Counselors

The recruitment of individuals with severe disabilities requires partnership with the VA and state DVR offices. Vocational rehabilitation counselors must make a site visit and tour the Postal Service facility. Seeing Postal Service

operations up close provides counselors with a better understanding of our work environment and job requirements. A demonstration of the functional and physical requirements for each eligible entry-level job assists the counselor to further screen potential applicants and identify those individuals who are likely to be successful in available Postal Service jobs. Counselors should also be provided with the following:

■    A standard position description.

■    A job preview video, if available.

■    Information on probationary timelines and performance standards/requirements.

## 443 Noncompetitive Hiring Process

The following steps must be taken when hiring using the noncompetitive authority:

(1)    The Postal Service manager requests the state DVR or VA to certify three names for consideration and one additional name for each additional vacancy. This certification must be consistent with the process outlined by the state DVR or VA in its certification package, and include completed PS Form 2591, *Application for Employment,* and PS Form 3666, *Certification for Postal Service Employment of Individuals with Severe Disabilities.*

(2)    Certified applicants are then given a tour of the Postal Service facility during a prehire orientation. The visit should provide sufficient information to assist the applicants in making an informed decision about whether they are interested in Postal Service employment.

(3)    Interviewers then engage in an interactive process to identify the essential functions of the job and the abilities and limitations of the applicant. Otherwise, the interview process for an individual with a disability is essentially the same as an interview conducted with an applicant who does not have a disability.

(4)    The referred applicants are considered and tentative selection is made in accordance with the eligibility and suitability guidelines outlined in Handbook EL-312, *Employment and Placement.* A list of those applicants not selected for the job is then returned to the state DVR or VA, as appropriate.

(5)    After making a conditional job offer, the selecting official (or designee) schedules the selected applicant for a medical assessment and provides a copy of PS Form 3666 and any other supporting documentation concerning the applicant's disability and the job offered (see subchapter 45).

(6)    Following the applicant's successful completion of the medical assessment, the selection official (or designee) schedules a meeting with the applicant, rehabilitation counselor, disability coordinator (if any), and immediate supervisor or designated operations manager to discuss requirements (e.g., agreed upon accommodations for training and/or job performance, confidentiality issues, how best to integrate the new employee into the unit, communicating expectations, continuous

assessment during the probation period, and documentation requirements). Notes from this meeting should be attached to the *Reasonable Accommodation Decision Guide* (see Exhibit 2-2) and forwarded to the local manager of Human Resources or designee for retention.

### 444 Probation Period for Individuals Hired Under Noncompetitive Process

If it becomes reasonably clear at any point during the probationary period that an employee with a severe disability hired under the noncompetitive process is having difficulty developing the requisite abilities for the job, the immediate supervisor must request that the appropriate VA or state DVR counselor assist in overcoming problems and deficiencies in performance.

Schedule a meeting at the earliest possible opportunity to attempt to correct the performance deficiency. Often, an early dialogue can result in a quick solution to the performance problem. A simple job modification or a different method of communication may be the only change necessary to enable the employee to perform the essential functions of the job more efficiently.

If the employee is still unable to develop the requisite skills and abilities for the job, with or without reasonable accommodation, separation must be initiated during the probation period. The Postal Service installation head or designee must notify the VA or state DVR when a decision is made that the person's employment is to be terminated. This enables the VA or state DVR to make other arrangements for rehabilitation, employment, or other assistance.

## 45   Medical Assessment

Whether selected under a competitive or noncompetitive process, applicants who receive a conditional offer are referred for medical assessment. Do not make medical inquiries or schedule a medical assessment prior to making a bona fide conditional offer.

Conditional job offers must precede medical assessments whether the applicant was selected under a competitive or noncompetitive process.

### 451 Information Furnished for Medical Assessment

The hiring official should provide the office performing the medical assessment with the following items:

- Copy of PS Form 3666 for an individual selected under the noncompetitive process.
- Any further documentation supporting the existence of a disability and accommodation needs.
- Usual paperwork furnished for pre-employment medical assessments as described in chapter 5 of Handbook EL-312, *Employment and Placement.*

### 452  Function of the Medical Assessment

The medical assessment provides the hiring official with information concerning an applicant's physical and/or mental ability to perform a specific job. It identifies any physical and/or mental restrictions or limitations of the applicant. It may also suggest job modifications or accommodation, which reduce the applicant risk and allow the functions of the job to be performed in a safe manner.

The medical assessment provides critical information necessary to the hiring official to make an informed hiring decision. The assessment is not a recommendation for or against hiring and placement. This decision rests with the hiring official based on an individualized determination of the situation and the applicant in question.

Further evaluation by a contract or private physician, or specialist(s) may be required (see section 223.2) to identify potential accommodations if the medical information developed is not adequate to make a hiring decision. Contact local medical personnel for assistance, or seek the advice and assistance of outside sources, such as the VA, state DVR, or Job Accommodation Network, if appropriate. Detailed information on accommodations that might be needed for a deaf or hard of hearing individual can be found in Exhibit 5-1.

## 46  Determining Whether and How to Accommodate Physical Limitations

After carefully considering the results of the medical assessment and the applicant's ability to perform the essential functions of the job with or without reasonable accommodation, the hiring official ultimately determines whether the applicant will be appointed. In order to reach a decision, hiring officials must follow the reasonable accommodation process described in chapter 2.

A job applicant must be qualified and able to perform the essential functions of the job for which a conditional job offer was extended, with or without reasonable accommodation. Reassignment is not available to applicants.

When considering your accommodation options be aware that modification to vehicles, new assignments of Postal Service vehicles when a Postal Service-owned or leased vehicle is not provided or currently required, and modifications to automated mail processing equipment must be approved by appropriate authorities before a hiring decision is made (see subchapter 54).

Exhibit 4-1 (p. 1)
**PS Form 3666,** *Certification for Postal Service Employment of Individuals with Severe Disabilities*

---

**UNITED STATES POSTAL SERVICE**®

**Certification of Postal Service Employment of Individuals with Severe Disabilities**
*(Please print or type)*

Position Title

☐ City Carrier    ☐ Data Conversion Operator    ☐ Clerk    ☐ Mail Handler    ☐ Other *(Specify)*

_____

**Applicant**

| Name | Address (No., street, apt., city, state, and ZIP + 4) |
|---|---|
| SSN                           DOB | |

**To:**

| Postal Service Personnel Office Name | Address (No., street, apt., city, state, and ZIP + 4) |
|---|---|

**From:**

| VA or Rehabilitation Office Name | Address (No., street, apt., city, state, and ZIP + 4) |
|---|---|
| Counselor's Printed Name | Phone No. *(Include area code)* |

The above-named applicant for the cited position in _____
                                                                    *(city and state)*

has a severe disability, _____ . I have reviewed both the job requirements and the job
                                *(code)*

site and certify that the applicant:

    a   has the ability to perform the duties of the position;

    b.  is qualified to do the work without hazard to self or others;

    c.  is physically and socially competent to maintain him or herself in a work environ-
       ment, either independently, or with the same level of assistance he or she uses dur-
       ing non-working hours;

    d.  is unable to successfully compete in the Postal Service competitive process because
       of the nature or severity of the disability; and

    e.  can reasonably be expected to meet or exceed the normal standards of job perfor-
       mance of the position within the 90-day probationary period.

| Counselor's Signature | Date |
|---|---|

PS Form **3666,** September 2003 *(Page 1 of 2)*                              *(Supplement to PS Form 2591)*

---

Exhibit 4-1 (p. 2)
**PS Form 3666, *Certification for Postal Service Employment of Individuals with Severe Disabilities***

---

### Disability Codes

**Hearing Impairments**

16   Total deafness with understandable speech
17   Total deafness with inability to speak clearly

**Vision Impairments**

23   Cannot read ordinary size print — not correctable by glasses
25   Blind in both eyes

**Missing Extremities**

28   One arm
32   One leg
33   Both hands or arms
34   Both feet or legs
35   One hand or arm and one foot or leg
36   One hand or arm and both feet or legs
37   Both hands or arms and one foot or leg
38   Both hands or arms and both feet or legs

**Partial Paralysis**

64   Both hands
65   Both legs (any part)
66   Both arms (any part)
67   One side of body (including one arm and one leg)
68   Three or more major parts of the body (arms and legs)

**Complete Paralysis**

71   Both hands
72   One arm
73   Both arms
74   One leg
75   Both legs
76   Lower half of body
77   One side of body (including one arm and one leg)
78   Three or more major parts of body (arms and legs)

**Other Impairments**

82   Convulsive disorders (e.g., epilepsy)
90   Mental retardation
91   Mental or emotional illness
92   Severe distortion of limbs and/or spine

---

**Speech Impairment**

13   Speech malfunction, hearing normal

**Hearing Impairment**

15   Hard of hearing

**Vision Impairment**

22   Can read ordinary size print with glasses but with loss of peripheral vision
24   Blind in one eye

**Missing Extremities**

27   One hand
29   One foot

**Non-Paralytic Orthopedic Impairments**

44   One or both hands
45   One or both feet
46   One or both arms
47   One or both legs
48   Hip or pelvis
49   Back
57   Any combination of two or more parts of the body

**Partial Paralysis**

61   One hand
62   One arm (any part)
63   One leg (any part)

**Complete Paralysis**

70   One hand

**Other Impairments**

80   Heart disease (with no restriction or limitation of activity)
81   Heart disease (with limitation of activity)
83   Blood disease
84   Diabetes
86   Pulmonary disorders
87   Kidney dysfunction
88   Cancer (history with complete recovery)
89   Cancer (undergoing surgical and/or medical treatment)
93   Disfigurement of face, hands, or feet
94   Learning disability

---

PS Form **3666**, September 2003 *(Page 2 of 2)*                                        *(Supplement to PS Form 2591)*

# 5 Reasonable Accommodation After Appointment

## 51 Orientation and Training

Follow the usual orientation and training procedures for qualified individuals with disabilities, providing reasonable accommodation as appropriate. Where appropriate, seek the advice and assistance of internal employee development and training specialists as well as external sources, such as the Veterans Administration (VA), state Department of Vocational Rehabilitation (DVR), or the national Job Accommodation Network (JAN).

## 52 Bids, Promotions, and Reassignments

Once individuals with disabilities enter the regular workforce, or if individuals become disabled during their employment with the Postal Service, they have all bid and promotion rights afforded any employee under the applicable collective bargaining agreement. The reasonable accommodation decision process is initiated each time an employee with a disability is being considered for a different job (either through bid, application, or other procedures). Engage in the same case-by-case interactive process (see subchapter 22) to determine whether the individual has a disability and meets minimum qualifications to identify the essential functions of the job in question, to determine the employee's abilities and limitations, and to identify and evaluate potential accommodations. Focus first on the employee's ability to perform the desired job. If it is concluded that the employee can perform the job's essential functions with or without accommodation, then focus on accommodations that might be required for the selection process (e.g., examination and/or training). This sequence is important because training processes range from those performed on site or within a few hours of the home installation (e.g., scheme training) to those performed at another location for weeks (e.g., bulk mail and maintenance training). The Postal Service is not obligated to train an employee for a job he or she will be unable to do even if the disability could be accommodated during the selection process. However, it is critical that such a determination be made only after an individualized assessment of the situation and the individual in question and consultation with your area law office. Document the process and conclusions reached on the *Reasonable Accommodation Decision Guide* (see Exhibit 2-2).

Example — A deaf or hard of hearing individual assigned to a mail processing clerk job may require certain safety equipment, such as warning lights, to supplement auditory alarms. If the employee is later reassigned or promoted to a job requiring more personal contact, different accommodations may be necessary, such as finger spelling. In this example, the individual's limitations remain the same throughout the process; it is the job and the requirements imposed upon his or her performance that changed.

Example — A letter carrier develops heart disease and has to undergo surgery. Before he returns to work, he bids on a carrier vacancy that requires less walking and provides medical documentation that he will be able to perform the full duties of the job within 3 months. As the senior bidder, he is awarded the job. However, after 1 week in the new job, the employee requests reassignment to a vacant clerk position because he says that the route requires him to walk more than he anticipated and given his heart condition and newly diagnosed emphysema, he does not feel up to it. In this example, the job and the performance requirements remained the same but the individual's limitations changed. Since he relates the need for the reassignment to a medical condition, his request should be considered a request for reasonable accommodation and processed using the five-step interactive process described in chapter 2.

# 53 Employee Request for Reasonable Accommodation in Current Job

A request for reasonable accommodation may be made orally or in writing by an employee or by someone acting on the employee's behalf. To request an accommodation, an employee may use plain language and need not mention the Rehabilitation Act or use the phrase "reasonable accommodation." The employee need only let you know that he or she requires a change at work because of a physical or mental impairment. A family member, friend, or other representative may request reasonable accommodation on behalf of an employee with a disability. However, the Postal Service should deal directly with the employee during the interactive process. The request can be made to the supervisor or manager or the local manager of Human Resources. When you receive an accommodation request, you are responsible for processing that request using the guidance contained in subchapter 22. Alternatively, many districts and areas have Reasonable Accommodation Committees to whom you can refer the request. (If unsure, check with your local manager of Human Resources.) In addition, if an employee with a known impairment is observed having difficulty performing essential functions of his or her job because of his or her impairment, you should initiate the interactive process.

Verbal requests for reasonable accommodation should be documented for local record keeping and to ensure that every request receives a timely decision (see time frames in subchapter 24 and Exhibit 2-1, *Confirmation of Request for Reasonable Accommodation*. **Exception:** Once an employee requests and is granted a type of reasonable accommodation that he or she is likely to need on a repeated basis (e.g., an interpreter or computer software that enlarges text), documentation for record keeping purposes is not required each time the accommodation is needed.

## 531 Reassignment as a Reasonable Accommodation

Reassignment is a form of reasonable accommodation that may be appropriate if no other accommodation will allow the employee to perform the essential functions of the position. Barring undue hardship, reassignment will be considered as a reasonable accommodation if it is determined that no other reasonable accommodation will permit the employee with a disability to perform the essential functions of his or her current position.

Where reassignment is or may be appropriate, consult with Human Resources personnel and consider the following:

- Authorized positions at the same level in the same commuting area for which the employee is qualified and which are currently vacant or will become vacant over the next 60 calendar days.

- If no comparable position is available, lower level positions in the same commuting area that are authorized, vacant, or soon-to-be vacant over the next 60 calendar days.

- Reassignment may be made to a vacant position outside of the employee's commuting area if the employee is willing to relocate. The Postal Service is not obligated to pay relocation costs for change in duty station for an employee's benefit (see Handbook, F-15, *Travel and Relocation*).

The employee may need reasonable accommodation to perform the essential functions of the new position. Efforts to accommodate with reassignment should be noted on the *Reasonable Accommodation Decision Guide* (see Exhibit 2-2).

# 54 Modification of Vehicles, Vehicle Assignments, and Automated Mail Processing Machines as a Reasonable Accommodation

All requests to modify vehicles including, but not limited to, vehicle equipment, components, structure, configuration, or operating characteristics and all requests to provide a vehicle that is owned or leased by the Postal Service as an accommodation when one is not provided or required currently must be approved first by Headquarters. A request for an action of this nature should be referred to the local manager, Vehicle Maintenance, who will forward it to Delivery Vehicle Operations at Headquarters for a decision.

All requests to modify automated mail processing equipment must be first approved by Headquarters. A request of this nature should be furnished to the local manager, In Plant Support, who will forward it to the manager of Engineering Change Board at Headquarters.

# 55 Disability Retirement

Employees who meet eligibility requirements may apply through their personnel office for Office of Personnel Management disability retirement. The application for disability retirement includes an Agency Certification of Reassignment and Accommodation Efforts. Disability retirement standard operating procedures can be accessed on the personnel desktop under the Human Resources Web page on the Postal Service intranet.

Reasonable Accommodation After Appointment                                   55

Exhibit 5-1 (p. 1)
**Reasonable Accommodation for the Deaf and Hard of Hearing**

---

### Reasonable Accommodation for the Deaf and Hard of Hearing

Management has an obligation to reasonably accommodate deaf and hard of hearing employees and applicants who request assistance in communicating with or understanding others in work-related situations, such as the following:

- During investigative interviews that may lead to discipline, discussions with a supervisor on job performance or conduct, or presentation of a grievance.
- During some aspects of training, including formal classroom training.
- During portions of employee assistance programs (EAP) and EEO counseling.
- In critical elements of the selection process, such as during testing and interviews.
- During regular staff meetings, employee orientations, and safety talks, combined federal campaign (CFC), and savings bond drive kickoff meetings.
- During the filing or meetings concerning an employee's claim for on-the-job injury.

A reasonable accommodation must be approached on a case-by-case basis and based on an individual determination. This obligation is met by engaging in the interactive process described in an effort to identify an effective accommodation. The following should be considered:

- The ability of the employee to understand various methods of communication and the ability of others to understand the deaf or hard of hearing employee.
- The importance of the situation as it relates to work requirements, job rights, and benefits.
- The availability and cost of the alternative resources under consideration.
- Whether the situation requires confidentiality.

Include available resources, such as the following:

- Installation heads are authorized to pay for certified interpreters. Every effort will be made to provide certified interpreters when deemed necessary. The Registry of Interpreters for the Deaf offers information on locating and using interpreters and transliteration services. In some states and for certain situations, the state DVR may provide an interpreter at no charge.
- Volunteer interpreters or individuals skilled in signing obtained from the workforce or community. The level of such persons varies; ensure that any volunteers used are providing effective accommodation.
- In some situations, written communications may be appropriate. The ability of employees who are deaf or hard of hearing to understand written communications should be considered.
- Supervisors, training specialists, and EAP and EEO counselors may be trained in sign language.
- Deaf or hard of hearing applicants should normally be scheduled for a specific examination time when an interpreter will be available.
- State or federal relay services may provide a way for a deaf or hard of hearing employee to conduct Postal Service business by telephone with other employees and customers.

---

Exhibit 5-1 (p. 2)
**Reasonable Accommodation for the Deaf and Hard of Hearing**

---

### Reasonable Accommodation for the Deaf and Hard of Hearing (p. 2)

Management will provide the following assistance for employees who are deaf or hard of hearing:

- Films or videotapes developed on or after October 1, 1987, designed for the training or instruction of regular workforce employees, are to be opened or close captioned. To the extent practicable, existing films or nationally developed videotapes that will continue to be used with some frequency by employees who are deaf or hard of hearing are to be close captioned.

- Special telecommunications devices for the deaf are to be installed in all Postal Service installations employing deaf employees in the regular workforce. Special telecommunication devices or telephone volume control devices are to be installed for hard of hearing employees whenever the employee needs a reasonable accommodation in order to communicate by phone. These devices are to be available to employees who are deaf or hard of hearing for official business and in the case of personal emergencies. Management is to provide training to staff on the use of these special telecommunication devices.

- Visual alarms are to be installed on powered industrial equipment in Postal Service installations employing deaf employees in he regular workforce or in installations where such a reasonable accommodation is necessary for a hard of hearing employee.

- Visual fire alarms are to be installed in all new Postal Service installations where the Postal Service installs audible fire alarms (installations for which the Postal Service as of June 12, 1991, had not yet awarded a contract for the design of the building).

---

# Glossary

| | |
|---|---|
| **accessibility** | The capability of being used. Handbook RE-4, *Standards for Facility Accessibility by the Physically Handicapped,* presently provides that, "Where handicapped persons are employed in existing postal facilities, or where their employment is imminent, applicable employee work areas must be altered in compliance with (accessibility) standards..." |
| **Americans with Disabilities Act (ADA)** | The Americans with Disabilities Act is civil rights legislation which prohibits discrimination based upon a person's disabilities. It covers the private sector and state and local governments. The ADA requires such entities to accommodate individuals with disabilities in all phases of government services, public accommodations, transportation, and employment. |
| **bona fide job offer** | An offer made to an applicant selected either competitively or noncompetitively after having met the overall eligibility and personal suitability requirements. |
| **Code of Federal Regulations (CFR)** | A codification of the rules published in the *Federal Register* by executive departments and agencies of the federal government. Postal regulations are found in 39 CFR. |
| **collective bargaining agreements** | Also referred to as National Agreements or Contracts, these are the Postal Service-wide binding terms and conditions agreed upon by the Postal Service and labor unions. |
| **competitive employment process** | The consideration and selection of individuals from a hiring register established as the result of rankings achieved on a competitive entrance examination. |
| **direct threat** | A significant risk of substantial harm to the safety or health of the person or others that cannot be eliminated by reasonable accommodation. |
| **disability** | A physical or mental impairment that substantially limits one or more major life activities of an individual. |
| **disability retirement** | An application for annuity filed by an employee claiming permanent, total disability for his or her job. |
| **Division or Department of Vocational Rehabilitation (DVR)** | State offices providing rehabilitation assistance for individuals with disabilities. |

Glossary

| | |
|---|---|
| **Equal Employment Opportunity Commission (EEOC)** | A federal commission that works to provide equal opportunities for all personnel in employment, training, assignment, promotion, and job security without discrimination owing to race, color, religion, sex, national origin, age, or physical or mental disability. |
| **essential functions** | The major tasks that must be accomplished on a specific job. They are tasks that, if performed incorrectly or omitted by the individual, will result in failure to attain the basic purpose of the job. Other factors to consider are the amount of time a satisfactory individual normally spends performing the function, whether the function is uniformly performed by incumbents, the past experience of job holders, the degree of skills and abilities needed to perform the function (see 2-2.1). Essential functions may vary from one installation to another for specific jobs with the same job title and occupation code. |
| **Family and Medical Leave Act (FMLA)** | The federal law that requires covered employers to provide up to 12 weeks of unpaid, job-protected leave to *eligible* employees for certain family and medical reasons. Employees are generally eligible if they have worked for at least 1 year and for 1,250 hours over the previous 12 months. |
| **Federal Employees' Compensation Act** | The Federal Employees' Compensation Act is a law which provides compensation benefits to civilian employees of the United States for disability (FECA) due to personal injury (including occupational disease) sustained while in the performance of duty. Damage to or destruction of medical braces, artificial limbs, and other prosthetic devices incidental to a personal injury is also compensable. The FECA also provides for the payment of benefits to dependents if job-related injury or disease causes the employee's death. |
| **impairments** | See *physical or mental impairments.* |
| **job restructuring** | Altering a job in a fashion that enables a qualified person with a disability to perform the essential functions. |
| **light duty** | Work, as defined in a specific collective bargaining agreement, provided to an employee who is unable to perform the full duties of his or her job due to a non-work-related injury or illness. |
| **major life activities** | Functions such as, but not limited to (see 1-4.1.2) caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. |
| **medical assessment** | Preemployment medical examination, medical assessment questionnaire process, or additional information to identify an individual's ability to perform the functions of the job in question without endangering the health and safety of the individual or others. |
| **noncompetitive employment process** | The Postal Service's structured procedure for hiring and placement of qualified persons outside the competitive process (see *competitive employment process*) e.g., persons with severe disabilities evaluated, certified, and referred by state DVR or VA for employment consideration. |

Glossary

| | |
|---|---|
| **physical or mental impairments** | (1) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, cardiovascular, reproductive, digestive, genito-urinary, hemic, and lymphatic, skin, and endocrine; or (2) any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities. |
| **qualified individuals with a disability** | With respect to employment, an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the job in question without endangering the health and safety of the individual or others. A qualified individual with a disability is required to perform at a level comparable to that of other employees. |
| **reasonable accommodation** | An adjustment or modification to the facility, environment, equipment, testing situation, or policy, or to the nonessential functions of the particular job, which will allow the qualified individual with a disability to perform the essential functions of that job. |
| **Rehabilitation Act of 1973** | The Rehabilitation Act prohibits discrimination against qualified employees and job applicants with disabilities in the federal government. The act also requires that federal employers provide reasonable accommodation to such individuals in order to allow them to perform the essential functions of their job. Accommodations are not required when they impose an undue hardship on the employer or endanger the health and safety of the individual or others. |
| **restrictions** | See *work restrictions.* |
| **restructuring** | See *job restructuring.* |
| **risk assessment** | The identification of physical or mental restrictions or limitations of the individual, and the degree of risk for further illness or injury within the next 6 months. It may suggest job modifications or accommodations that would reduce individual risk and allow performance of the essential functions of the job in a safe manner. |
| **substantially limits** | An impairment rendering the individual either unable to perform a major life activity or significantly restricted in performing the activity as compared to the average person's ability to perform the activity. |
| **targeted disabilities** | Disabilities targeted by the Equal Employment Opportunity Commission (EEOC) for emphasis in affirmative action program planning. The disabilities and the codes that represent them are as follows: 16 and 17 (deafness), 23 and 25 (blindness), 28 and 32 through 38 (missing extremities), 64 through 68 (partial paralysis), 71 through 78 (complete paralysis), 82 (convulsive disorders), 90 (mental retardation), 91 (mental illness), and 92 (distortion of limbs and/or spine). |

Glossary

**undue hardship**

The Postal Service is required to make reasonable accommodation to known physical and mental limitations of a qualified individual with a disability unless the accommodation would impose an undue hardship on the operation to which individuals with disabilities are assigned. Factors to be considered in determining undue hardship are as follows: (1) the overall size of the operation with respect to the number of employees, number and type of facilities, and size of budget; (2) the type of operation, including composition and structure of the workforce; and (3) the nature and cost of the accommodation.

**Department of Veterans Affairs (VA)**

An agency of the federal government, formerly called the Veterans Administration, serving the needs of former members of the United States armed forces.

**work restrictions**

Specific functions that a person with a disability should not perform (e.g., no heavy lifting over 50 pounds).