**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JAN L. AUSTIN | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Civil Action No: 05-1824 (PLF)** |
| | ) |
| JOHN E. POTTER, POSTMASTER | ) |
| GENERAL, UNITED STATES POSTAL | ) |
| SERVICE | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**DEFENDANT'S MOTION TO DISMISS, OR,**
**IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendant, by undersigned counsel, respectfully moves the Court, pursuant to Rule

12(b)(6) to dismiss the Complaint on the ground that Plaintiff has failed to state a claim upon

which relief can be granted.  In the alternative, defendant moves the Court, pursuant to Rule 56

of the Federal Rules of Civil Procedure, for summary judgment on the grounds that no genuine

issue of material fact exists and that defendant is entitled to judgment as a matter of law.  In

support of this motion, the Court is respectfully referred to the accompanying Memorandum of

Points and Authorities, Statement of Material Facts Not in Dispute, Declarations of Manuella

"Monni" Preston, Juanita Mack, and Elizabeth Hammond.  A proposed order is also attached.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar # 451058
Assistant United States Attorney

_____
R. CRAIG LAWRENCE, D.C. Bar # 171538
Assistant United States Attorney

_____
WYNEVA JOHNSON, DC Bar #278515
Assistant United States Attorney
Judiciary Center Bldg.
555 4th Street, N.W., Civil Division
Washington, D.C. 20530
(202) 514-7224

OF COUNSEL:
AYOKA A. CAMPBELL
United States Postal Service
Capital Metro Law Office

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| **JAN L. AUSTIN** | ) |
|  | ) |
| **Plaintiff,** | ) |
|  | ) |
| **v.** | ) |
|  | ) |
| **JOHN E. POTTER, POSTMASTER** | ) |
| **GENERAL, UNITED STATES POSTAL** | ) |
| **SERVICE** | ) |
|  | ) |
| **Defendant.** | ) |

Civil Action No: 05-1824 (PLF)

_____

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The Plaintiff filed this civil action pursuant to the Rehabilitation Act of 1973 as amended,

29 U.S.C. §791 alleging that the defendant discriminated against her because of a physical

disability caused by an on the job injury[1].  Complaint ¶6.  The defendant moves to dismiss or in

the alternative, for summary judgment on the grounds that there are genuine issues of material

fact and the Defendant is entitled to summary judgment as a matter of law.

**I. STATEMENT OF FACTS**

Plaintiff began her employment with the Postal Service on October 29, 1988, as a part-

time flexible city letter carrier. See Exh. 2 (Plaintiff's Form 50).

In December 1996, Plaintiff was placed on limited duty.  The Plaintiff was not assigned

to her regular duties as Sales Service Associate/ Distribution Clerk, but assigned to perform

---

1  Plaintiff withdrew her claims under Title VII.  (Complaint ¶ 11).

other duties, including processing passports, assisting the Post Office Box Clerk, processing

certified mail, and express mail notices, and other forms, and equipment for the Finance Section.

 See Complaint ¶ 7, 16; Hammond Dec. ¶ 4; Preston Dec. ¶ 4; Exh. 1 (Limited Duty Offer dated

December 16, 1996); and Exh. 2 (Plaintiff's Form 50).  In April 2002, Plaintiff remained under

work restrictions and was assigned to limited duty.  Elizabeth Hammond became Acting

Manager, Customer Services of Friendship Station in Washington, D.C. in April 2002 and

supervised the Plaintiff.  See Complaint ¶ 19; Hammond Dec. ¶ 2.

        Limited Duty positions in the Postal Service are available only to Postal Service

employees receiving Federal Employees' Compensation Act ("FECA") benefits.  FECA requires

a federal employer to find alternate work for injured employees who cannot perform the

functions of their regular duty positions.  See 20 C.F.R. § 10.505; 10.515 (2002); 5 C.F.R. §353

et seq.  The positions are managed by the Department of Labor's Office of Workers'

Compensation ("OWCP").  See 20 C.F.R. §10.1 (2002); 5 C.F.R. §353 et seq.  The injured

employee is obligated to seek work and accept "suitable work" offered.  Id.  The goal of the

OWCP program is to return injured employees to work as soon as medically possible. See

Complaint ¶¶ 14, 16, & 17; Hammond Dec. ¶¶ 4, 5, 10; Preston Dec. ¶¶ 5, 10; Exh. 3 (20 C.F.R.

§10; 5 C.F.R. part 353); Exh 10(a) (ELM Section 546); Exh. 4 (Reasonable Accommodation

Handbook, EL-307); Exh. 5 (Excerpts from Injury Compensation Handbook, EL-505).

        According to the CA-17 form or duty status report[2] dated July 10, 2002, submitted by the

---

2  A CA-17 is the Department of Labor's OWCP duty status report form provided for the
purpose of keeping the Agency's Injury Compensation Office and the OWCP office informed of
the injured or ill employee's ability to return to full duty.  Side A is completed by the immediate
supervisor concerning the Plaintiff's duties.  Side B is completed by the attending physician and
includes a brief description of the injury or illness and part(s) of the body affected.

Plaintiff, her physical restrictions prevented her from: "stand[ing] for longer than 30 minutes without a break," or "lifting anything over five (5) pounds." Her restrictions also stated that she needed "a back support." See Complaint ¶ 17, 18; Hammond Dec. ¶ 6; Preston Dec. ¶ 5; Exh. 6 (Plaintiff's CA-17 dated July 10, 2002); Exh. 5 (Excerpts from Injury Compensation Handbook, EL-505).

In August 2002, Ms. Hammond noted that the Plaintiff did not have eight (8) hours of work. She asked the Plaintiff to sell stamps and other products in the Postal Store. These duties were consistent with the Plaintiff's medical restrictions listed in the July 10, 2002, CA-17 form. See Complaint ¶ 16, 19; Hammond Dec. ¶ 6; Preston Dec. ¶ 7; Mack Dec. ¶ 6. The duties in the Postal Store required the Plaintiff to stand while assisting customers, but not more than 30 minutes at a time. The Plaintiff was allowed to sit in a chair during the times when she was not waiting on customers. See Complaint ¶ 21, 22; Hammond Dec. ¶¶ 6, 7. Mack Dec. ¶ 7 ; Preston Dec. ¶¶ 8-9.

In October 2002, Plaintiff refused to perform the Postal Store duties, such as standing to assist customers. Ms. Hammond explained to the Plaintiff that she could not be paid to do nothing. When the Plaintiff refused to perform her duties, Ms. Hammond requested that Plaintiff submit updated restrictions if her restrictions had changed. See Complaint ¶ 20, 22; Hammond Dec. ¶ 8-9; Preston Dec. ¶ 11.

On October 2002, Ms. Hammond also called in Monni Preston, Injury Compensation Specialist, to meet with Plaintiff to discuss the work restrictions in the July 10, 2002, CA-17 form, to ensure that Plaintiff was working in a safe manner. See Complaint ¶ 20-22; Hammond ¶ 9-10; Preston Dec. ¶ 10. During this meeting in October 2002, Ms. Preston reviewed

Plaintiff's current CA-17 form dated July 10, 2002, and spoke with both Ms. Hammond and the Plaintiff. Based on this information, Ms. Preston determined that Plaintiff's duties were within her medical restrictions, as stated in the CA-17 form, and that Plaintiff had been offered "suitable work" as required by the Federal Employees' Compensation Act (FECA). See Complaint ¶ 23; Hammond Dec. ¶ 10; Preston Dec. ¶ 10; and Exh. 5 (Form CA-17 dated July 10, 2002).

After this meeting, Plaintiff still refused to perform the duties within her medical restrictions. On October 5, 2002, Plaintiff told Ms. Preston and Ms. Hammond that she was not going to do any of the work she was assigned, rather, she was "just going to sit." According to Agency regulations, "[e]mployees are expected to discharge their assigned duties conscientiously and effectively." See Exh. 7 (Employee and Labor Relations Manual (ELM), Chapter 6, Section 666.1). As a result, the Plaintiff was sent home when she refused to do any work on October 5, 2002. See Complaint ¶ 22; Hammond ¶ 11; Preston ¶ 11.

Sometime after October 5, 2002, Plaintiff submitted additional documentation which contained new restrictions signed by Dr. Leonid Selya, which indicated that the Plaintiff was "unable to tolerate sitting, standing or walking for a short period of time." Ms. Hammond had no assignments within Plaintiff's new medical restrictions. Therefore, Ms. Preston sent Plaintiff a letter on October 10, 2002, stating that because her restrictions were "so severe," there was no work available for her. Ms. Preston enclosed a CA-7[3] form to claim compensation so that the

_____

3 A CA-7 form is an OWCP form that serves to claim compensation or schedule award when either disability for work extends beyond the authorized period of continuation of pay (COP), or when compensation is requested for disability and/or absences from work due to an occupational claim. See Exh. 5 (Injury Compensation Handbook EL-505 at 415).

4

Plaintiff could be paid for her time off. See Complaint ¶ 23; Preston¶ 12; Exh. 8 (Letter from Ms. Preston to Plaintiff dated October 10, 2002).

Plaintiff submitted a CA-7 form on October 21, 2002. The Plaintiff also submitted an updated medical document that stated, "Clinically, the patient is in pain. It is constant low back pain radiating to the lower extremities. It affects the patient's walking, sitting and standing as well as her employment. She has been on light duty for quite a long period of time and barely can tolerate this work assignment. It affects her low back condition." Exh. 9. The employer side of the CA-7 form was then completed by Ms. Preston on December 11, 2002. In this form, Ms. Preston indicated that the agency was unable to accommodate Plaintiff based on her new medical restrictions. Preston Dec. ¶ 13;  Exh. 9 ( Ms. Austin's Orthopaedic Follow-Up Received February 2003); Exh. 10 (CA-7 forms from Plaintiff dated Oct. 21, 2002, and Agency dated December 10, 2002).

Plaintiff was not terminated. She remains an employee of the United States Postal Service. Plaintiff is entitled to return to a position in the Postal Service following her recovery from an on the job injury. See 5 C.F.R. §353.301; Exh. 10a (ELM Section 546). In December 2002, a Claims Examiner reviewed Plaintiff's restrictions and determined that Plaintiff's restrictions were so severe that she could not be accommodated, but she could be placed on the Department of Labor's periodic rolls and receive monthly compensation payments from the Department of Labor.[4]  Preston Dec. ¶ 14; Exhibit 11  (Ms. Austin's Compensation History).

The Plaintiff continues to receive monthly compensation from the Department of Labor

---

4  Periodic rolls are a system utilized by OWCP whereby the U.S. Treasury pays prolonged disability cases each 28 days… automatically unless advised otherwise by OWCP.  See Exh. 4 (Injury Compensation Handbook EL-505 at 420).

and has not returned to full duty.  The Defendant continues to engage in the interactive process

and works with Plaintiff's Claims Examiner to offer Plaintiff positions within the Postal Service.

Plaintiff turned down the last offer in November 2003.  See  Preston Dec. ¶15; and Exh. 12

(Modified Assignment dated Nov. 4, 2003).

 Plaintiff initiated EEO counseling on September 5, 2002.  Plaintiff alleged

"discrimination based on race and discrimination and physical disability in that: (1) on August

24, 2002, she began performing an additional duty working in the postal store that was not in

line with her limited medical restrictions; (2) on October 5, 2002, she was told that she could not

sit while assisting customers; (3) told that they no longer have any work for her and demanded

that she leave the premises immediately or be threatened with the police; and (4) told not to

return October 7, 2002, to her regular assignment duties of passport processing.  See Complaint

¶ 7; Exh. 13 (Counselor's Report).

 Plaintiff filed a formal EEO complaint in Postal Service EEO Case No. 100-2005-

00361X, on April 19, 2003.  Complaint ¶ 7; Exh. 14 (Formal Complaint).  On May 14, 2003, the

Postal Service issued an "Acceptance of Formal EEO Complaint" in which it defined one issue

raised in Plaintiff's administrative complaint.  See Complaint ¶ 8; Exh. 15 (Acceptance letter

dated May 14, 2003).  The defined issue was that the Plaintiff alleged that she was discriminated

based on "race (African American), sex (Female), age (D.O.B.: 3/27/59), physical disability (on-

the-job injury/back) when: (1) on August 24, 2002, [she] began performing an additional duty in

the Postal Store that was not in line with [her] limited medical restrictions; (2) on October 5,

2002, management told [her] that [she] could not sit while assisting customers; (3) on October 5,

2002, management told [her] that they no longer had any work for [her] and demanded that [she]

leave the premises immediately or the police would be called, and (4) on October 5, 2002, management told [her] not to return on October 7, 2002, to [her] regular assignment duties of passport processing." See Id.

Plaintiff requested a hearing on February 11, 2005. See Complaint ¶ 9; Exh. 16 (Plaintiff's Request for Hearing). On July 19, 2005, the Administrative Judge (AJ) Frances del Toro granted the Agency's Motion for a Decision Without a Hearing and issued a Decision finding no discrimination. See Complaint ¶ 10, 12; Exh. 17 (AJ Order Entering Judgment). On August 4, 2005, the Postal Service issued a Notice of Final Action adopting the AJ's Decision and informing the Plaintiff of her appeal rights and right to file in federal district court. See Complaint ¶ 13; Exh.18 (Notice of Final Action).

In her complaint filed in this Court, Plaintiff, has withdrew her claims of discrimination based on race, sex, and age. See Complaint ¶ 11. Thus, the only remaining claim is discrimination under the Rehabilitation Act of 1973 as amended. Id.

### III.  ARGUMENT

### A.  Standard for Dismissal Pursuant to Fed.R.Civ.P.12(b)(6)

A motion pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief may be granted tests the legal sufficiency of the complaint. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). While the complaint need only set forth a short and plain statement of the claim sufficient to give the defendant fair notice of its contours and the grounds upon which it rests (Kingman Park Civic Ass'n v. Williams, 348 F.3d 1033, 1040 (D.C, Cir. 2003)), dismissal is appropriate in any case in which the defendant demonstrates that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. Id.; Warren v. District of

7

<u>Columbia</u>, 353 F.3d 36, 37 (D.C. Cir. 2004).   Moreover, in testing the complaint, the court is not required to accept as true "inferences unsupported by the facts set out in the complaint or legal conclusions cast as factual allegations."  <u>Kingman</u>, 348 F.3d at 1040.

### B.  <u>Summary Judgment Standard</u>

Under Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if there is no genuine issue of material fact in dispute.  <u>Tao v. Freeh</u>, F.3d 635, 638 (D.C. Cir. 1994).  Under the summary judgment standard, the moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those positions of the pleadings, dispositions, answers to interrogatories, and admissions on file, together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact."  <u>Celotex Corp. v. Catrett</u>, 4577 U.S. 317, 323 (1986).  The Plaintiff, in response to the Defendant's motion, must identify for the Court specific facts showing that there is a genuine issue for trial.  <u>Id</u>. at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party.  <u>Laningham v. U.S. Navy</u>, 813 F.2d 1236, 1242-23 (D.C. Cir. 1987); <u>Liberty Lobby</u>, 477 U.S. at 251 (the court must determine whether it is so one-sided that one party must prevail as a matter of law").  "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted."  <u>Liberty</u>

Lobby, 477 U.S. at 249-50 (internal citations omitted).

"Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment." Williams v. Callaghan, 938 F.Supp. 46, 49 (D.D.C. 1996). The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant party to "come forward with 'specific facts showing that there is a genuine issue for trial.'" Id. at 587 (citing Fed. R. Civ. P. 569 (e)) (emphasis in original).

'[W]hile summary judgment must be approached with specific caution in discrimination cases, a plaintiff is not relieved of her obligation to support her allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." Calhoun v. Johnson, No. 95-2397, 1998 Wl 164780, at *3 (D.D.C. Mar. 31, 1998), aff'd, No. 99-5126, 1999 WL 825425, at *1 (D.C. Cir. Sept. 27, 1999); see also Marshall v. James, 276 F. Supp. 2d 41, 47 (D.D.C. 2003) (special caution "does not eliminate the use of summary judgment in discrimination cases"). "Summary judgment is not a 'disfavored procedural shortcut,' but is an integral procedural tool which promotes the speedy and inexpensive resolution of every case." Marshall, 276 F.Supp 2d at 47 (quoting Colotex Corp., 477 U.S. at 327).

### C.    The Plaintiff Cannot Establish a Prima Facie Case of Discrimination Under the Rehabilitation Act

The Plaintiff's claim of disability discrimination should be dismissed with prejudice because the Plaintiff is not a qualified person with a disability. To make out a prima facie

employment discrimination case under the Rehabilitation Act, the Plaintiff must demonstrate the following:  (1) that she is an individual with a disability; (2) that she is otherwise qualified to perform a job's requirements, with or without reasonable accommodation; and (3) that she was discriminated against solely because of the disability.  <u>Mahon v. Crowell</u>, 295 F.3d 585, 589 (6th Cir. 2002)(citations and quotation marks omitted); <u>see also</u> <u>Sampson v. Citibank, F.S.B.</u>, 53 F. Supp. 2d 13, 17 (D.D.C. 1999), aff'd, 221 F.3d 196 (2000), <u>cert. denied,</u> 531 U.S. 970 (2000).[5] The Plaintiff is unable to establish any of these elements.

To sustain a disability discrimination claim pursuant to the Rehabilitation Act, a plaintiff - as a threshold matter - must establish that she has a disability.  <u>Mahon v. Crowell</u>, 295 F.3d 585, 589 (6th Cir. 2002); <u>Stein v. Ashcroft</u>, 284 F.3d 721, 724 (7th Cir. 2002).   In pertinent part, the Rehabilitation Act defines an "individual with a disability" as a person who has "a physical or mental impairment which substantially limits one or more of such person's major life activities." 29 U.S.C. § 705(20)(B)**.**  "'Substantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree.'" <u>Toyota v. Williams</u>, 534 U.S. 184, 196 (2002).  However, merely having an impairment does not make one disabled for the purposes of the statute. <u>Toyota</u>, 534 U.S. at 195.  The Plaintiff must instead demonstrate that the impairment substantially limits a major life activity, and is permanent or long-term.  <u>Id</u>.; <u>Paegle v. Dep't of the Interior</u>, 813 F.Supp. 61, 64 (D.D.C. 1993).  A major life activity is one that is of central

---

5  <u>Sampson</u> was decided under the ADA.  ADA cases may be relied upon because the ADA's definition of "individual with a disability" is virtually identical to the definition under the Rehabilitation Act.  <u>See</u> 29 U.S.C. §705(20)(B); 42 U.S.C. § 12102(2); <u>see also</u> <u>Bragdon v. Abbot</u>, 524 U.S. 624, 631 (1998) ("The ADA's definition of disability is drawn almost verbatim from the definition . . . included in the Rehabilitation Act of 1973").  Moreover, the Rehabilitation Act specifically incorporates the standards of the ADA with respect to claims of employment discrimination.  29 U.S.C. § 791(g).

importance to an individual's daily life, and includes such functions as caring for oneself,
performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.
Toyota v. Williams, 534 U.S. at 197; Stein, 284 F.3d at 724 (citation and quotation marks
omitted).  Manual tasks associated with a particular job, however, are not necessarily major life
activities.  Toyota, 534 U.S. at 201.

In Toyota, the Supreme Court cautioned that in meeting the requirements of establishing
a disability protected by the Rehabilitation Act, "[i]t is insufficient for individuals attempting to
prove disability status to merely submit evidence of a medical diagnosis of an impairment.
Instead, the ADA requires those 'claiming the Act's protection...to prove a disability by offering
evidence that the extent of the limitation [caused by the impairment] in terms of their own
experience is substantial.'"  Toyota, 534 U.S. at 198 (citation omitted).  The Court in Toyota
held that the impairment must "substantially limit" a major life activity. Id. at 196-97.
Substantial meant that the disability would interfere with a major life activity to "a large degree."
Id. at 197.  The Court held that " …to be substantially limited in performing manual tasks, an
individual must have an impairment that prevents or severely restricts the individual from doing
activities that are of central importance to most people's lives." Id.   A diagnosis of carpel tunnel
syndrome on its own does not indicate whether the individual has a disability.  Id. at 199.  Also,
"mitigating measures," like medication and devices, "must be taken into account in judging
whether an individual possesses a disability." Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 565
(1999);  Sutton v. United Air Lines, 527 U.S. 471, 488-489 (1999);  Tangires v. Johns Hopkins
Hosp., 79 F.Supp.2d 587, 595 (D.Md. 2000).

In short, to allege a truly disabling condition for purposes of a claim similar to the one

11

raised here, the Plaintiff must prove, by a preponderance of the evidence, that she has a

permanent or long-term impairment which substantially limits a major life activity, but with a

reasonable accommodation (which she has the burden of demonstrating exists), she can perform

the essential functions of her job.[6] See Flemmings v. Howard Univ., 198 F.3d 857, 861 (D.C.

Cir. 1999); Paegle, 813 F.Supp. at 64 ("The [Rehabilitation] Act identifies a handicap as a severe

disability of a permanent nature); Dorchy v. Washington Metro. Area Transit Auth., 45 F.Supp.

2d 5, 11, and 13 (D.D.C. 1999)(Employee has the burden of proving that she can perform the

essential functions of her job and proffering a reasonable accommodation that will allow her to

perform these functions.); Feliciano v. Rhode Island, 160 F.3d 780 (1st Cir. 1998) (The plaintiff

bears the burden of showing the existence of a reasonable accommodation.)

### D.    Plaintiff Does Not Meet the Rehabilitation Act's Definition of a "Individual With a Disability"

The present case is very similar to Toyota.  Like the plaintiff in Toyota, the Plaintiff is

unprotected by the Rehabilitation Act because her impairments have insufficient impact upon

her major life activities. In October 2002, the Plaintiff's work restrictions on file stated she had

"to take a break after thirty (30) minutes of standing," and "could not lift more than five (5)

---

6 Courts do not employ the same evidentiary scheme established by the Supreme Court in
McDonnell Douglas v. Green, 411 U.S. 792, 802-04 (1973) when evaluating a reasonable
accommodation claim.  See Flemmings v. Howard University, 198 F.3d 857, 860-861 (D.C.
Cir. 1999)(Plaintiff "carries the burden of proving by a preponderance of the evidence that
she has a disability, but with a reasonable accommodation (which she must describe), she
can perform the essential functions of her job.")  see also Barth v. Gelb, 2 F.3d 1180, 1186
(D.C.Cir. 1993) cert. denied, 511 U.S. 1030 (1994) (discussing three types of disability
cases, i.e., "(1) where the employer claims non-discriminatory reasons for its adverse
employment action; (2) where the employer maintains that the employee is not an otherwise
qualified individual with a disability, or that no reasonable accommodation is available; and
(3) where the employer offers the affirmative undue hardship defense for its actions, and the
burdens that apply in each.)"

pounds intermittently." See Exh. 6 (Form CA-17 for the Plaintiff dated July 10, 2002).

However, this is not an important part of most people's daily lives. Toyota 122 S. Ct. at 685,

692; 29 C.F.R. § 1640.2(j) (holding that an employee's inability to perform the duties of any

single job, rather than an inability to perform "a broad class of jobs," does not tend to prove that

his or her major life activities are substantially limited.[7]

     The issue ultimately becomes whether the Plaintiff's back injury in October 2002,

substantially limited a major life activity "central" to daily life.  It is clear that the inability to

work at a Postal Service facility is not a substantial limitation in the major life activity of

working.  To be substantially limited in working, one must be "significantly restricted in the

ability to perform either a class of jobs or a broad range of jobs in various classes," taking into a

number of factors related to job availability.  29 C.F.R. § 1630.2(j)(3)(i), (ii).  The Court of

Appeals for the District of Columbia has explained that if jobs utilizing a person's skills are

available, one is not precluded from a "substantial class of jobs," and if a host of different types

of jobs are available, one is not precluded from a "broad range of jobs."  Duncan v. WMATA,

240 F.3d 1110, 1115 (D.C. Cir. 2001).  Whether an impairment substantially limits the major life

activity of working necessarily turns on the "availability of jobs" for which the person qualifies.

Id.  The Plaintiff's claim that she cannot work in a Postal Service facility is, in actuality, only a

minuscule fraction of the potential jobs for which she is qualified in the public and private

sector.  Therefore, the Plaintiff is unable to prove that she is a person with a disability protected

under the Rehabilitation Act.

---

7  There was also no indication in 2002 that Plaintiff's on-the-job-back injury was permanent
in nature.  See Exh. 3 (Form CA-17 for Plaintiff dated July 10, 2002).

**E.      Even if the Plaintiff is an "Individual With a Disability," the Plaintiff
         is Not "Qualified" Under the Rehabilitation Act**

Even if the Plaintiff has a disability, she is still unable to satisfy the requirement that she

be a "qualified individual with a disability."  To be considered a qualified individual, the

Plaintiff must be able to both meet the requirements for her position and perform the

fundamental duties of that position either with or without reasonable accommodation.  See 29

C.F.R. § 1630.2(m).  As such, much consideration shall be given to the employer's judgment as

to what functions of a job are essential.  See 29 C.F.R. 1630.2(m).

According to the Plaintiff's supervisor, Ms. Hammond, a fundamental requirement for

working in the Postal Store was to wait on customers, which required standing intermittently.

Hammond Dec. ¶ 6.  Because the Plaintiff claims that she was no longer able or willing to

perform this essential duty of her position, she did not fulfill the requirements needed to

establish that she is a qualified disabled individual.  Chincillo v. FDIC, 236 F. Supp. 2d 18

(D.D.C. 2003) ("Rehabilitation Act mandates nondiscrimination against disabled individuals; it

does not waive basic prerequisites to service"); see also, Wilber v. Brady, 780 F. Supp. 837, 840

(D.D.C. 1992).  Thus, the Plaintiff is unable to establish a prima facie case of disability

discrimination.  The Plaintiff's discrimination claim is without merit and should be dismissed.

**F.      The Defendant Has Made a Good Faith Effort to Accommodate
         the Plaintiff.**

The Plaintiff cannot show that the Defendant failed to accommodate her since the

Defendant has, in good faith, engaged in the interactive process. It is the Plaintiff, not the

Defendant, who is responsible for the breakdown of these efforts by her failure to provide her

supervisor with the requisite documentation and paperwork on October 5, 2002, before she was

14

asked to leave the premises.  Ms. Hammond asked the Plaintiff to submit specific documentation

so that she could accurately determine if any changes in the Plaintiff's medical condition

warranted a review of the doctor's approved work duties associated with her restrictions.

Hammond Dec. ¶ 9.  When the Plaintiff failed to provide the requested and required

documentation by October 5, 2002, the Defendant was unable to continue its efforts to provide

accommodation for the Plaintiff.  Without medical documentation specifying that the Plaintiff

had to sit down all day and/or required a special chair, the Defendant was unable to determine if

a reasonable accommodation was appropriate, or for that matter, to determine if the Plaintiff

suffered from a disability as defined by the Rehabilitation Act prior to sending her home on

October 5, 2002.  The Plaintiff told Ms. Hammond on October 5, 2002, that she could still

perform work in the Passport office, but could not perform similar duties in the Postal Store,

Plaintiff was not entitled to the accommodation of her choice.  An employer may choose among

reasonable accommodations as long as the chosen accommodation is effective.  See Goodman v.

United States Postal Serv., 2005 U.S. Dist. Lexis 35423 (D.D.C. 2005).

        The Plaintiff finally submitted new documentation sometime after October 5, 2002.  The

medical documentation revealed that the Plaintiff was unable to perform her current alternative

limited duty assignment, and that she was unable to perform other available positions. The same

skills and functions which were affected by the Plaintiff's back injury in performing the limited

duty clerk position were also required for other positions. See Preston Dec. ¶ 12-16; Exh. 9

(Plaintiff's Orthopaedic Follow-Up).  Here, the Defendant has attempted to accommodate the

Plaintiff's restrictions, but no offer has yet been accepted by Plaintiff.  See Exh. 12 (Modified

Assignment dated Nov. 4, 2003). Accordingly, the Plaintiff has not shown that the Defendant

failed to make a good faith effort to accommodate her.

## **CONCLUSION**

For the foregoing reasons, this case should be dismissed, or alternatively, summary

judgment entered on behalf of the Defendant.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar # 451058
Assistant United States Attorney

_____
R. CRAIG LAWRENCE, D.C. Bar # 171538
Assistant United States Attorney

_____
WYNEVA JOHNSON, DC Bar #278515
Assistant United States Attorney
Judiciary Center Bldg.
555 4th Street, N.W., Civil Division
Washington, D.C. 20530
(202) 514-7224

OF COUNSEL:
AYOKA A. CAMPBELL
United States Postal Service
Capital Metro Law Office

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

JAN L. AUSTIN                    )
                                 )
            Plaintiff,           )
                                 )
        v.                       )        Civil Action No: 05-1824 (PLF)
                                 )
JOHN E. POTTER, POSTMASTER       )
GENERAL, UNITED STATES POSTAL    )
SERVICE                          )
                                 )
            Defendant.           )
_____)

**DEFENDANT'S STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Fed. R. Civ. P. 56(e) and Local Rule 7.1(h), the defendant respectfully

submits the following Statement of Material Facts Not in Dispute.

1.      Plaintiff began her employment with the Postal Service on October 29, 1988, as a

part-time flexible city letter carrier. See Exh. 2 (Plaintiff's Form 50).

2.      In December 1996, Plaintiff was placed on limited duty.  The Plaintiff was not

assigned to her regular duties as Sales Service Associate/ Distribution Clerk, but assigned to

perform other duties, including processing passports, assisting the Post Office Box Clerk,

processing certified mail, and express mail notices, and other forms, and equipment for the

Finance Section.   See Complaint ¶ 7, 16; Hammond Dec. ¶ 4; Preston Dec. ¶ 4; Exh. 1 (Limited

Duty Offer dated December 16, 1996);  Exh. 2 (Plaintiff's Form 50).

3.      Limited Duty positions in the Postal Service are available only to Postal Service

employees receiving Federal Employees' Compensation Act ("FECA") benefits.  FECA requires

a federal employer to find alternate work for injured employees who cannot perform the

functions of their regular duty positions.  <u>See</u> 20 C.F.R. § 10.505; 10.515 (2002); 5 C.F.R. §353 <u>et seq</u>.  The positions are managed by the Department of Labor's Office of Workers' Compensation ("OWCP").  <u>See</u> 20 C.F.R. §10.1 (2002); 5 C.F.R. §353 <u>et seq</u>.  The injured employee is obligated to seek work and accept "suitable work" offered.  <u>Id</u>.  The goal of the OWCP program is to return injured employees to work as soon as medically possible.  <u>See</u> Complaint ¶¶ 14, 16, & 17; Hammond Dec. ¶¶ 4, 5, 10; Preston Dec. ¶¶ 5, 10; Exh. 3 (20 C.F.R. §10; 5 C.F.R. part 353); Exh 10(a) (ELM Section 546); Exh. 4 (Reasonable Accommodation Handbook, EL-307); Exh. 5 (Excerpts from Injury Compensation Handbook, EL-505).

4.      In April 2002, Plaintiff remained under work restrictions and was assigned to limited duty.  Elizabeth Hammond became Acting Manager, Customer Services of Friendship Station in Washington, D.C. in April 2002 and supervised the Plaintiff.  <u>See</u> Complaint ¶ 19; Hammond Dec. ¶ 2.

5.      According to the CA-17 form or duty status report[1] dated July 10, 2002, submitted by the Plaintiff, her physical restrictions prevented her from: "stand[ing] for longer than 30 minutes without a break," or "lifting anything over five (5) pounds."  Her restrictions also stated that she needed "a back support."  <u>See</u> Complaint ¶ 17, 18; Hammond Dec. ¶ 6; Preston Dec. ¶ 5; Exh. 6 (Plaintiff's CA-17 dated July 10, 2002); Exh. 5 (Excerpts from Injury Compensation Handbook, EL-505).

---

1  A CA-17 is the Department of Labor's OWCP duty status report form provided for the purpose of keeping the Agency's Injury Compensation Office and the OWCP office informed of the injured or ill employee's ability to return to full duty.  Side A is completed by the immediate supervisor concerning the Plaintiff's duties.  Side B is completed by the attending physician and includes a brief description of the injury or illness and part(s) of the body affected.

2

6.      In August 2002, Ms. Hammond noted that the Plaintiff did not have eight (8)

hours of work.  She asked the Plaintiff to sell stamps and other products in the Postal Store.

These duties were consistent with the Plaintiff's medical restrictions listed in the July 10, 2002,

CA-17 form.  See Complaint ¶ 16, 19; Hammond Dec. ¶ 6; Preston Dec. ¶ 7; Mack Dec. ¶ 6.

The duties in the Postal Store required the Plaintiff to stand while assisting customers, but not

more than 30 minutes at a time.  The Plaintiff was allowed to sit in a chair during the times when

she was not waiting on customers.  See Complaint ¶ 21, 22; Hammond Dec. ¶¶ 6, 7.  Mack Dec.

¶ 7 ; Preston Dec. ¶¶ 8-9.

7.      In October 2002, Plaintiff refused to perform the Postal Store duties, such as

standing to assist customers.  Ms. Hammond explained to the Plaintiff that she could not be paid

to do nothing.  When the Plaintiff refused to perform her duties, Ms. Hammond requested that

Plaintiff submit updated restrictions if her restrictions had changed.  See Complaint ¶ 20, 22;

Hammond Dec. ¶ 8-9; Preston Dec. ¶ 11.

8.   On October 2002, Ms. Hammond also called in Monni Preston, Injury Compensation

Specialist, to meet with Plaintiff to discuss the work restrictions in the July 10, 2002, CA-17

form, to ensure that Plaintiff was working in a safe manner.  See Complaint ¶ 20-22; Hammond

¶ 9-10; Preston Dec. ¶ 10.  During this meeting in October 2002, Ms. Preston reviewed

Plaintiff's current CA-17 form dated July 10, 2002, and spoke with both Ms. Hammond and the

Plaintiff.  Based on this information, Ms. Preston determined that Plaintiff's duties were within

her medical restrictions, as stated in the CA-17 form, and that Plaintiff had been offered

"suitable work" as required by the Federal Employees' Compensation Act (FECA).  See

Complaint ¶ 23; Hammond Dec. ¶  10; Preston Dec. ¶ 10; and Exh. 5 (Form CA-17 dated July 10, 2002).

9.      After this meeting, Plaintiff still refused to perform the duties within her medical restrictions.  On October 5, 2002, Plaintiff told Ms. Preston and Ms. Hammond that she was not going to do any of the work she was assigned, rather, she was "just going to sit."  According to Agency regulations, "[e]mployees are expected to discharge their assigned duties conscientiously and effectively."  See  Exh. 7 (Employee and Labor Relations Manual (ELM), Chapter 6, Section 666.1).  As a result, the Plaintiff was sent home when she refused to do any work on October 5, 2002.  See Complaint ¶ 22; Hammond ¶ 11; Preston ¶ 11.

10.      Sometime after October 5, 2002,  Plaintiff submitted additional documentation which contained new restrictions signed by Dr. Leonid Selya, which indicated that the Plaintiff was "unable to tolerate sitting, standing or walking for a short period of time."

11.       Ms. Hammond had no assignments within Plaintiff's new medical restrictions. Therefore, Ms. Preston sent Plaintiff a letter on October 10, 2002, stating that because her restrictions were "so severe," there was no work available for her.  Ms. Preston enclosed a CA-7[2] form to claim compensation so that the Plaintiff could be paid for her time off.  Complaint ¶ 23; Preston¶ 12; Exh. 8 (Letter from Ms. Preston to Plaintiff dated October 10, 2002).

12.      Plaintiff submitted a CA-7 form on October 21, 2002.  The Plaintiff also submitted an updated medical document that stated, "Clinically, the patient is in pain.  It is

_____

2  A CA-7 form is an OWCP form that serves to claim compensation or schedule award when either disability for work extends beyond the authorized period of continuation of pay (COP), or when compensation is requested for disability and/or absences from work due to an occupational claim.  See Exh. 5 (Injury Compensation Handbook EL-505 at 415).

constant low back pain radiating to the lower extremities.  It affects the patient's walking, sitting and standing as well as her employment.  She has been on light duty for quite a long period of time and barely can tolerate this work assignment.  It affects her low back condition." Exh. 9. The employer side of the CA-7 form was then completed by Ms. Preston on December 11, 2002. In this form, Ms. Preston indicated on the form that the agency was unable to accommodate Plaintiff based on her new medical restrictions.  Preston Dec. ¶ 13;  Exh. 9 ( Ms. Austin's Orthopaedic Follow-Up Received February 2003); Exh. 10 (CA-7 forms from Plaintiff dated Oct. 21, 2002, and Agency dated December 10, 2002).

13.      Plaintiff's was not terminated.  She remains an employee of the United States Postal Service.   In December 2002, a Claims Examiner reviewed Plaintiff's restrictions and determined that her restrictions were so severe that she could not be accommodated, but she could be placed on the Department of Labor's periodic rolls and receive monthly compensation payments from the Department of Labor.[3]  Preston Dec. ¶ 14; See also Exhibit 11  (Ms. Austin's Compensation History).

14.      The Plaintiff continues to receive monthly compensation from the Department of Labor and has not returned to full duty.  The Defendant continues to engage in the interactive process and works with Plaintiff's Claims Examiner to offer Plaintiff positions within the Postal Service.  Plaintiff turned down the last offer in November 2003.  See  Preston Dec. ¶15; and Exh. 12 (Modified Assignment dated Nov. 4, 2003).

---

3  Periodic rolls are a system utilized by OWCP whereby the U.S. Treasury pays prolonged disability cases each 28 days… automatically unless advised otherwise by OWCP.  See Exh. 4 (Injury Compensation Handbook EL-505 at 420).

15.     Plaintiff initiated EEO counseling on September 5, 2002.  Plaintiff alleged "discrimination based on race and discrimination and physical disability in that: (1) on August 24, 2002, she began performing an additional duty working in the postal store that was not in line with her limited medical restrictions; (2) on October 5, 2002, she was told that she could not sit while assisting customers; (3) told that they no longer have any work for her and demanded that she leave the premises immediately or be threatened with the police; and (4) told not to return October 7, 2002, to her regular assignment duties of passport processing.  See Complaint ¶ 7; Exh. 13 (Counselor's Report).

16.     Plaintiff filed a formal EEO complaint with the Postal Service EEO, Case No. 100-2005- 00361X, on April 19, 2003.  Complaint ¶ 7; Exh. 14 (Formal Complaint).

17.     On May 14, 2003, the Postal Service issued an "Acceptance of Formal EEO Complaint" in which it defined one issue raised in Plaintiff's administrative complaint.  See Complaint ¶ 8; Exh. 15 (Acceptance letter dated May 14, 2003).  The defined issue was that Plaintiff alleged that she was discriminated based on "race (African American), sex (Female), age (D.O.B.: 3/27/59), physical disability (on-the-job injury/back) when: (1) on August 24, 2002, [she] began performing an additional duty in the Postal Store that was not in line with your limited medical restrictions; (2) on October 5, 2002, management told [her] that [she] could not sit while assisting customers; (3) on October 5, 2002, management told [her[ that they no longer had any work for [her] and demanded that [she] leave the premises immediately or the police would be called, and (4) on October 5, 2002, management told [her] not to return on October 7, 2002, to [her] regular assignment duties of passport processing."  See Id.

6

18.     Plaintiff requested a hearing on February 11, 2005.  <u>See</u> Complaint ¶ 9; Exh. 16 (Plaintiff's Request for Hearing).

19.     In this <u>de novo</u> proceeding, Plaintiff, has withdrawn her claims of discrimination based on race, sex and age from her EEO complaint.  <u>See</u> Complaint ¶ 11.  Thus, the only remaining claim is discrimination based is under the Rehabilitation Act of 1973 as amended.  <u>Id</u>.

20.     On July 19, 2005, the Administrative Judge (AJ) Frances del Toro granted the Agency's Motion for a Decision Without a Hearing and issued a Decision finding no discrimination.  <u>See</u> Complaint ¶ 10, 12; Exh. 17 (AJ Order Entering Judgment).

21.     On August 4, 2005, the Postal Service issued a Notice of Final Action adopting the AJ's Decision and informing the Plaintiff of her appeal rights and right to file in federal district court.  <u>See</u> Complaint ¶ 13; Exh.18 (Notice of Final Action).

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar # 451058
Assistant United States Attorney

_____
R. CRAIG LAWRENCE, D.C. Bar # 171538
Assistant United States Attorney

_____
WYNEVA JOHNSON, DC Bar #278515
Assistant United States Attorney
Judiciary Center Bldg.
555 4th Street, N.W., Civil Division
Washington, D.C. 20530
(202) 514-7224

OF COUNSEL:
AYOKA A. CAMPBELL
United States Postal Service
Capital Metro Law Office

8