IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JAN L. AUSTIN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No: 05-1824 (PLF) |
| | ) | |
| JOHN E. POTTER, POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF MANUELA "MONNI" PRESTON

I, Manuela "Monni" Viola Preston, declare the following to be true and correct. This declaration is being submitted in connection with the Civil Action No. 1824 (PLF):

1. I am African American, female, age (D.O.B.: 9/16/1959). I am not disabled.

2. I am employed by the Postal Service as Injury Compensation Specialist. My offices are located in Washington, D.C. I have held this position since 9/16/1959.

3. As Injury Compensation Specialist, I was assigned to the Customer Services Area for the Capital District. I am responsible for the processing of the Department of Labor's Office of Worker's Compensation forms related to employee on-the-job injuries, reviewing documents submitted by employee's regarding their work restrictions due to on-the-job injuries, and speaking with supervisors and managers regarding these employees and their employment with the U.S. Postal Service.

4. Since December of 1996, Plaintiff was working as a Limited Duty Sales Service Associate/Distribution Clerk since December 1996 due to an on-the-job injury. Ms. Austin was located at the Friendship Station in Washington, D.C. Ms. Austin was not assigned to perform

her regular duties as Sales Service Associate/Distribution Clerk, but responsible for processing passports, assisting the Post Office Box Clerk, processing certified mail, express mail notices and other forms and equipment for the Finance Section. See Exh. 1 (Limited Duty Offer); Exh 2 (Plaintiff's Form 50).

5. Limited Duty positions in the Postal Service are available only to Postal Service employees receiving Federal Employees' Compensation Act ("FECA") benefits. FECA requires a federal employer to find alternate work for injured employees who cannot perform the functions of their regular duty positions. 20 C.F.R. § 10.505; 10.515 (2002). The positions are managed by the Department of Labor's Office of Workers' Compensation ("OWCP"). 20 C.F.R. §10.1 (2002). The injured employee is obligated to seek work and accept "suitable work" offered. Id. The goal of the OWCP program is to return injured employees to work as soon as medically possible. Exh. 3 (20 C.F.R. §10); Exh. 5 (Excerpts from Injury Compensation Handbook, EL-505).

6. According to the CA-17 or duty status report[1] dated July 10, 2002, submitted by the Plaintiff, her physical restrictions prevented her from: "stand[ing] for longer than 30 minutes without a break," "lifting anything over five (5) pounds," and stated that she needed "a back support." See Exh. 6 (Plaintiff's CA-17 dated July 10, 2002); Exh. 5 (Excerpts from Injury Compensation Handbook, EL-505).

7. In August 2002, Ms. Austin's supervisor, Elizabeth Hammond, who was Acting Manager Customer Services for the Friendship Station, noted that the Plaintiff did not have eight

---

[1] A CA-17 is the Department of Labor's OWCP duty status report form provided for the purpose of keeping the Agency's Injury Compensation Office and the OWCP office informed of the injured or ill employee's ability to return to full duty. Side A is completed by the immediate supervisor concerning the Plaintiff's duties. Side B is completed by the attending physician and includes a brief description of the injury or illness and part(s) of the body affected.

2

(8) hours of work. She informed me that she asked the Plaintiff to sell stamps and other products in the Postal Store during the times she was not processing passports.

8. According to the CA-17 dated July 10, 2002 for Ms. Austin on file at the time, these duties in the Postal Store were within Ms. Austin's restrictions. See Exh. 6 (Plaintiff's CA-17 dated July 10, 2002);

9. Ms. Austin complained to Ms. Hammond in October 2002 that the additional duties of selling stamps in the Postal Store given to her by her supervisor Ms. Hammond were in violation of her medical restrictions. According to Ms. Austin she could not sit while she waited on customers. This is not true. In the Postal Store, Ms. Austin was only required to stand to wait on customers, which was never more than thirty minutes, and could sit down in between her waiting on customers. Therefore, the assignment was within her restrictions. According to the restrictions listed in the CA-17 dated July 10, 2002 on file at the time, Ms. Austin was able to stand for 30 minutes at a time. This additional duty in the Postal Store had no affect on Ms. Austin's pay or benefits.

10. Ms. Hammond and I did meet with Ms. Austin to discuss her work restrictions in early October 2002. Ms. Hammond wanted to make sure that Ms. Austin was working safely and that the Agency was not violating her restrictions. After reviewing the CA-17 dated July 10, 2002, and speaking with Ms. Hammond and Ms. Austin concerning Ms. Austin's assignment, I determined that Ms. Austin's duties were within her medical restrictions, and that she was offered "suitable work" as required by FECA in early October 2002. See Exh. 3.

11. After this meeting, I was informed by Ms. Hammond that Ms. Austin still refused to perform the duties within her medical restrictions on or about October 5, 2002. On or about October 5, 2002, Ms. Austin stated to me and Ms. Hammond that she was not going to do any of

the work she was assigned but was just going to sit." According to Agency regulations, "[e]mployees are expected to discharge their assigned duties conscientiously and effectively." Exh. 7 (Employee and Labor Relations Manual (ELM), Chapter 6, Section 666.1). Therefore, the Plaintiff was sent home when she refused to do any work on October 5, 2002.

12. Some time after October 5, 2002, the Plaintiff submitted new restrictions by Dr. Leonid Selya that stated that the Plaintiff was "unable to tolerate sitting, standing or walking for a short period of time." Ms. Hammond had no assignments within Ms. Austin's new medical restrictions. Therefore, I sent Ms. Austin a letter on October 10, 2002, stating that because her restrictions were "so severe" there was no work available for her. I enclosed a CA-7[2] or form to claim compensation, so that the Plaintiff could be paid for her time off. See Exh. 8 (Letter from Ms. Preston to Plaintiff dated October 10, 2002).

13. Plaintiff submitted a CA-7 form on October 21, 2002. The Plaintiff also submitted updated medical document that stated, "Clinically, the patient is in pain. It is constant low back pain radiating to the lower extremities. It affects the patient's walking, sitting and standing as well as her employment. She has been on light duty for quite a long period of time and barely can tolerate this work assignment. It affects her low back condition." The employer side of the CA-7 form was completed by me on December 11, 2002, stating that the Agency could not accommodate the Plaintiff based on her restrictions. See Exh. 10 (Ms. Austin's CA-7 received 12/16/03); Exhibit 9 ( Ms. Austin's Orthopaedic Follow-Up Received February 2003).

14. Ms. Austin has not been terminated and is still an employee of the United States Postal Service. In December 2002, a Claims Examiner reviewed Ms. Austin's restrictions and

---

[2] A CA-7 is an OWCP form that serves to claim compensation or schedule award when either disability for work extends beyond the authorized period of continuation of pay (COP), or when compensation is requested for disability and/or absences from work due to an occupational claim. See Exh. 5 (Injury

4

determined that Ms. Austin's restrictions were so severe that she could not be accommodated, but could be placed on the Department of Labor's periodic rolls[3] and receive monthly compensation payments from the Department of Labor. See Exhibit 11 (Ms. Austin's Compensation History).

15.     Plaintiff still receives monthly compensation from the Department of Labor and has not returned to full duty. The Agency still engages in the interactive process and works with the Plaintiff's Claims Examiner to offer Ms. Austin positions. Ms. Austin turned down the last offer in November 2003. See Exh. 12 (Modified Assignment dated Nov. 4, 2003).

16.     The statements made herein are based upon my personal knowledge, upon information made available to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

---

Compensation Handbook EL-505 at 415).

[3] Periodic rolls are a system utilized by OWCP whereby the U.S. Treasury pays prolonged disability cases each 28 days… automatically unless advised otherwise by OWCP. See Exh. 4 (Injury Compensation Handbook EL-505 at 420).

5

The statements made herein are based upon my personal knowledge, upon information made available to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing declaration is true and correct. Executed in Washington, D.C. on March 14, 2006.

*Manuela V. Preston*
MANUELA VIOLA PRESTON