# EXHIBIT 17

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**WASHINGTON FIELD OFFICE**
1801 L Street, N.W., Suite 100
Washington, D.C. 20507

| | | |
|---|---|---|
| Jan L. Austin,<br>          Complainant, | )<br>)<br>) | EEOC No. 100-2005-00361X |
| | )<br>) | Agency No. 4K-200-0045-03 |
| v. | )<br>) | |
| John E. Potter, Postmaster General,<br>United States Postal Service,<br>          Agency. | )<br>)<br>)<br>) | **Date: July 19, 2005** |

## ORDER ENTERING JUDGMENT

For the reasons set forth in the enclosed Decision dated July 19, 2005, judgment in the above-captioned matter is hereby entered.  A Notice To The Parties explaining their appeal rights is attached.

This office is also enclosing a copy of the hearing record for the Agency.

This office will hold the report of investigation and the complaint file for sixty days, during which time the Agency may arrange for their retrieval.  If we do not hear from the Agency within sixty days, we will destroy our copy of these materials.

**It is so ORDERED.**

For the Commission:

_____
Frances del Toro
Administrative Judge

Enclosures

## CERTIFICATE OF SERVICE

For timeliness purposes, it shall be presumed that the parties received the foregoing documents within five (5) calendar days after the date they were sent *via* first class mail. I certify that on July 19, 2005, the foregoing documents were sent *via* first class mail and *via* facsimile to the following:

Jan L. Austin
5036 11th Street, NE
Washington, DC 20017-2848

Antoini M. Jones
Attorney at Law
6811 Kenilworth Ave., Suite 210
Riverdale, MD 20737-1333

Ayoka Campbell, Esq.
U.S. Postal Service
Capital Metro Law Office
400 Virginia Ave., SW, Suite 650
Washington, DC 20024-2730

Manager EEO Compliance and Appeals
United States Postal Service
Capital Metro Operations
P.O. Box 1730
Ashburn, VA 20146-1730

Frances del Toro
Administrative Judge

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**WASHINGTON FIELD OFFICE**
**1801 L Street, NW., Suite 100**
**Washington, D.C. 20507**

| | | |
|---|---|---|
| Jan L. Austin, | ) | EEOC No. 100-2005-00361X |
|     Complainant, | ) | |
| | ) | Agency No. 4K-200-0045-03 |
|       v. | ) | |
| | ) | |
| John E. Potter, Postmaster General, | ) | |
| United States Postal Service, | ) | **Date: July 19, 2005** |
|     Agency. | ) | |

## DECISION

Jan L. Austin, Complainant, has satisfied the procedural prerequisites for a hearing, but the evidence does not warrant one. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Complainant alleged discrimination on the bases of her race (African American), sex (female), age (DOB: 3/27/59) and physical disability (on-the-job-back injury), when: (1) on August 24, 2002, she began performing an additional duty working in the Postal Store that was not in line with her limited medical restrictions; (2) on October 5, 2002, management told her that she could not sit while assisting customers; and (3) on October 5, 2002, management told her that they no longer had work for her and demanded that she leave the premises immediately or the police would be called; and (4) on October 5, 2002, management told her not to return on October 7, 2002, to her regular assignment duties of passport processing.

On June 23, 2005, the Agency filed a Motion for a Decision Without a Hearing Pursuant to 29 CFR § 1614.109(g). To date, Complainant has not filed an opposition to the Agency's motion. I have reviewed the entire record before me in this matter, which consists of the

Investigative Report (IR) and the Agency's Motion for a Decision Without a Hearing. Upon consideration of the record before me, I **GRANT** Summary Judgment in favor of the Agency and conclude that the Agency did not discriminate against the Complainant.

I find that the Agency's Motion for Summary Judgment correctly states the material facts and applicable legal standards.[1] Additionally, the Agency's Motion for a Decision Without a Hearing shows that the Agency has articulated legitimate, nondiscriminatory reasons for its actions and that there are no genuine issues of material fact or credibility that require resolution at a hearing. Thus, Summary Judgment in favor of the Agency is appropriate for the reasons stated in its Motion, *i.e.*, the Complainant failed to show that she is a qualified individual with a disability; did not establish a *prima facie* case of race, sex and/or age discrimination; and failed to produce any evidence that could refute the Agency's articulation that: (1) it made a good faith effort to accommodate Complainant; (2) Complainant was given new "suitable work" within her restrictions; (3) Complainant refused to perform her new duties; and (4) Complainant failed to provide updated medical documentation to show that she was unable to perform her newly assigned duties. In addition, Complainant failed to present any other evidence that could prove that the Agency discriminated against her. Accordingly, I **GRANT** Summary Judgment in favor of the Agency in this matter.

**Frances del Toro**
**Administrative Judge**

---

[1] A copy of the Agency's Motion for Summary Judgment is attached to this decision.

## NOTICE

This is a decision by an Equal Employment Opportunity Commission Administrative Judge issued pursuant to 29 C.F.R. § 1614.109(b), 109(g) or 109(i).  **With the exception detailed below, the complainant may not appeal to the Commission directly from this decision.**  EEOC regulations require the Agency to take final action on the complaint by issuing a final order notifying the complainant whether or not the Agency will fully implement this decision within forty (40) calendar days of receipt of the hearing file and this decision.  The complainant may appeal to the Commission within thirty (30) calendar days of receipt of the Agency's final order.  The complainant may file an appeal whether the Agency decides to fully implement this decision or not.

The Agency's final order shall also contain notice of the complainant's right to appeal to the Commission, the right to file a civil action in federal district court, the name of the proper defendant in any such lawsuit and the applicable time limits for such appeal or lawsuit.  If the final order does not fully implement this decision, the Agency must also simultaneously file an appeal to the Commission in accordance with 29 C.F.R. § 1614.403, and append a copy of the appeal to the final order.  A copy of EEOC Form 573 must be attached.  A copy of the final order shall also be provided by the Agency to the Administrative Judge.

If the Agency has <u>not</u> issued its final order within forty (40) calendar days of its receipt of the hearing file and this decision, the complainant may file an appeal to the Commission directly from this decision.  In this event, a copy of the Administrative Judge's decision should be attached to the appeal.  The complainant should furnish a copy of the appeal to the Agency at the same time it is filed with the Commission, and should certify to the Commission the date and method by which such service was made on the Agency.

All appeals to the Commission must be filed by mail, personal delivery or facsimile to the following address:

> Director
> Office of Federal Operations
> Equal Employment Opportunity Commission
> P.O. Box 19848
> Washington, D.C. 20036
> Fax No. (202) 663-7022

Facsimile transmissions over 10 pages will not be accepted.

## COMPLIANCE WITH AN AGENCY FINAL ACTION

An Agency's final action that has not been the subject of an appeal to the Commission or civil action is binding on the Agency.  <u>See</u> 29 C.F.R. § 1614.504.  If the complainant believes that the Agency has failed to comply with the terms of its final action, the complainant shall notify the Agency's EEO Director, in writing, of the alleged noncompliance within thirty (30) calendar days of when the complainant knew or should have known of the alleged noncompliance.  The Agency

shall resolve the matter and respond to the complainant in writing. If the complainant is not satisfied with the Agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination of whether the Agency has complied with the terms of its final action. The complainant may file such an appeal within thirty (30) calendar days of receipt of the Agency's determination or, in the event that the Agency fails to respond, at least thirty-five (35) calendar days after complainant has served the Agency with the allegations of noncompliance. A copy of the appeal must be served on the Agency, and the Agency may submit a response to the Commission within thirty (30) calendar days of receiving the notice of appeal.

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**WASHINGTON FIELD OFFICE**
**1801 L Street, NW, Suite 100**
**Washington, D.C. 20507-1002**

|                        |     |                                         |
| ---------------------- | --- | --------------------------------------- |
|                        | )   |                                         |
| JAN L. AUSTIN          | )   |                                         |
|                        | )   |                                         |
| Complainant,           | )   |                                         |
|                        | )   | EEOC No. 100-2005-00361X                |
| v.                     | )   | Agency No. 4K-200-0045-03               |
|                        | )   |                                         |
| John Potter,           | )   |                                         |
| Postmaster General,    | )   | Administrative Judge: Frances del Toro  |
| U.S. Postal Service,   | )   |                                         |
|                        | )   |                                         |
| Agency.                | )   |                                         |
|                        | )   |                                         |

## AGENCY'S MOTION FOR A DECISION
## WITHOUT A HEARING PURSUANT TO 29 CFR § 1614.109(g)

Pursuant to 29 CFR § 1614.109(g), the Agency hereby moves for a decision without a hearing in the above-captioned proceeding.

As demonstrated herein, Complainant's claims of discrimination based on her disability, race, sex, and age, should be summarily dismissed. First, the Complainant does not meet the Rehabilitation Act's definition of an individual with a disability nor a qualified individual with a disability. Furthermore, the Complainant cannot make out a prima facie case of discrimination based on her race, sex, or age. Finally, the Agency has a legitimate, non-discriminatory reason for its actions.

## II.     ISSUE

Complainant alleges that she was discriminated against based on her race (African American); sex (female); age (D.O.B.: 3/27/59); and physical disability (on-the-job-back injury) when (1) on August 24, 2002, she began performing an additional duty working in the Postal Store that was not in line with her limited medical restrictions; (2) on October 5, 2002, management told her that she could not sit while assisting customers; (3) on October 5, 2002, management told her that they no longer had work for her and demanded that she leave the premises immediately or the police would be called; and (4) on October 5, 2002, management told her not to return on October 7, 2002 to her regular assignment duties of passport processing.

## III.     FACTUAL CONTENTIONS:

1.  At all times relevant to this complaint, Jan L. Austin ("Complainant") was a United States Postal Service (USPS) Limited Duty Clerk employed at the Friendship Station Post Office in Washington, D.C.   IF, Exh. 1 (Complainant's Form 50).

2.  Complainant's supervisor at all times relevant to this complaint was Elizabeth Hammond, former Manager, Customer Services, of Friendship Station in Washington, D.C.  IF, Exh. B (Affidavit of Elizabeth Hammond).

3.  In the capacity of Limited Duty Clerk, the Complainant was not assigned to perform her regular duties as Clerk.  Instead, she was assigned to processing passports and selling stamps and other products in the Postal Store.  IF, Exh. A (Complainant's Affidavit); IF Exh. B (Affidavit of Elizabeth Hammond).

4. Complainant is an African American female, age (D.O.B.: 3/27/59). IF, Exh. 1 (Complainant's Form 50); IF, Exh. A (Complainant's Affidavit).

5. Complainant alleges she has a disability based on the conditions of an on-the-job-back injury. IF, Exh. A (Complainant's Affidavit).

6. Complainant's alleged disabling conditions, according to her doctor at the times relevant to this complaint, limited her ability to "stand for longer than 30 minutes without a break," "no lifting anything over five (5) pounds," and she needed "a back support." See IF, Exh. 3 (Form CA-17 for Complainant dated July 10, 2002).

8. According to Ms. Hammond, in August 2002, the Complainant did not have eight (8) hours of work to perform in the Passport Office, so she was given additional duties in the Postal Store. See IF, Exh. B at 3. Ms. Hammond stated that in October 2002, the Complainant stated that "she was not going to do any of the work she was assigned but was just going to sit. It was explained to her she would not be paid to do nothing..." IF, Exh B (Affidavit of Ms. Hammond at p. 3). Ms. Hammond also states the Complainant "was told not to return to work until she was going to be gainfully employed or updated restrictions stating she could not do the work assigned." Id.

9. Based on the Agency's records, the Complainant never submitted any updated medical restrictions. See IF, Exh. B. (Affidavit of Ms. Hammond at p. 3).

10. Under Agency regulations in effect at times relevant to this complaint, Limited Duty positions in the Postal Service are available only to Postal Service employees receiving Federal Employees' Compensation Act ("FECA") benefits.

FECA requires a federal employer to find alternate work for injured employees who cannot perform the functions of their regular duty positions. 20 C.F.R. § 10.505; 10.515 (2002). The positions are managed by the Department of Labor's Office of Workers' Compensation ("OWCP"). 20 C.F.R. §10.1 (2002). The injured employee is obligated to seek work and accept "suitable work" offered. Id. The goal of the OWCP program is to return injured employees to work as soon as medically possible. Id.

11. According to Agency regulations, "[e]mployees are expected to discharge their assigned duties conscientiously and effectively." Employee and Labor Relations Manual (ELM), Chapter 6, Section 666.1.

12. On October 25, 2002, in a Decision Letter by management, Complainant's grievance was denied. Management determined that the Complainant failed to perform duties within her restrictions and as a result was sent home and had to take sick leave. Management further held that the Complainant's sits for most of the day and that her request for a special chair was not discussed in the past as a restriction, and only when she was informed that she needed to work in the Postal Store. See IF, Exh. 7, Letter of Decision dated October 25, 2002.

I.    **COMPLAINANT'S ALLEGATIONS OF DISABILITY DISCRIMINATION SHOULD BE DISMISSED**

   A.    **The Complainant Does Not Meet the Rehabilitation Act's Definition of a "Individual With a Disability"**

As a threshold matter, in a case of disability discrimination under a failure to accommodate theory, a complainant must demonstrate that he or she is a "qualified individual with a disability." As explained below, Complainant cannot

meet this standard and therefore fails to establish a prima facie case of disability discrimination.

To qualify as "disabled", within the meaning of the Rehabilitation Act, Complainant's medical conditions must result in an impairment that substantially limits one or more of her major life activities.  See 29 C.F.R. § 1630.2(g).  The Commission points out as examples of major life activities, functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i).  The Supreme Court has ruled that the phrase "substantially limits ... major life activities" must be "interpreted strictly" in order to "create a **demanding standard for qualifying as disabled** [emphasis added]".  Toyota Motor Manufacturing, Kentucky, Inc., v. Williams, 122 S. Ct. 681 (2002).  As stated by the Supreme Court in Toyota,

> [i]If Congress intended everyone with a physical impairment that precluded the performance of some isolated, unimportant, or particularly difficult manual task to qualify as disabled, the number of disabled Americans [cited by Congress as 43 million] would surely have been much higher [than 43 million].

Id., p. 691.  In order for an impairment to constitute such a substantial limitation, it must cause a substantial impact upon the individual's life, not merely a partial limitation or some slight shortcoming in his activities.  Accordingly, the determination of whether an individual is "disabled" hinges upon the effect which his impairment has on his life, rather than on the name of the physical or mental impairment.  29 C.F.R. § 1630.2(j) (which distinguished disability associated with a pronounced, rather than a minor, case of cerebral palsy).

In the Toyota decision, the Supreme Court held that an employee who worked on an automobile assembly line, but who was unable to handle repetitive work at or above her shoulder level and who was also precluded from lifting 20 pounds or more continually, from frequently lifting 10 pounds, and from engaging in repetitive flexion or extension of her wrists or elbows had failed to prove the requisite substantial limitation in a major life activities. This was, in part, because such actions were not found to be an important part of most people's daily lives. Toyota, 122 S. Ct. at 685 (holding that "[h]ousehold chores, bathing, and brushing one's teeth" are the types of activities which are contemplated as major life activities); see Frank J. Ingemi v. USPS (EEOC March 10, 2004) (holding that carpal tunnel syndrome is not a disability in this instance as it did not prevent or severely restrict the complainant from performing tasks of central importance to people's lives, as opposed to tasks associated with a specific job). Nor did the plaintiff's inability to perform certain manual tasks such as gripping and repetitive work with her hands and arms due to carpal tunnel syndrome create the requisite limitation. Toyota, 122 S. Ct. at 684, 686. The Court also held that although the plaintiff's medical conditions caused her to avoid sweeping, to quit dancing, to occasionally seek help dressing, and to reduce how often she plays with her children, gardens, and drives long distances, these limitations were insufficient to render her disabled. Id.

The present case is very similar to Toyota. Like the plaintiff in Toyota, Complainant is unprotected by the Rehabilitation Act because her impairments have insufficient impact upon her major life activities. Complainant has to take a

break after thirty (30) minutes of standing and cannot lift more than five (5) pounds intermittedly.  See IF, Exh. 3 (Form CA-17 for Complainant dated July 10, 2002).  However, this is not an important part of most people's daily lives. Toyota 122 S. Ct. at 685, 692; 29 C.F.R. § 1640.2(j) (holding that an employee's inability to perform the duties of any single job, rather than an inability to perform "a broad class of jobs," does not tend to prove that his or her major life activities are substantially limited).[1]

Although Complainant states she has difficulty performing daily tasks, she is able to take care of both herself and her home without assistance.  See Attached Agency Exhibit 1, Complainant's Response to Agency's Interrogatory #12. Thus, by her own admission, she is not substantially limited in performing any of the manual tasks the Supreme Court outlined as being of central importance to people's daily lives (such as performing household chores, bathing and brushing one's teeth).  Id.

Complainant claims her disabilities substantially limit her ability to engage in manual tasks such as laundry, cleaning, and shopping. See Attached Agency Exhibit 1, Complainant's Response to Agency's Interrogatory #12.  However, she gives no convincing explanation as to the extent that she is limited in such activities, although she was asked to do so by the Agency in discovery.  Id.

---

[1] There was also no indication in 2002 that Complainant's on-the-job-back injury was permanent in nature.  See IF, Exh. 3 (Form CA-17 for Complainant dated July 10, 2002).

In addition, the Complainant is not substantially limited in the activity of working. Complainant's impairment did not keep her from working passport duties from 1996 to 2002. Futhermore, any other activities Complainant has listed are not considered essential to the average individual's lifestyle and consequently do not qualify her as having a disability.

**B.      Even If She is an "Individual With a Disability," she Is Not "Qualified" Under the Rehabilitation Act**

Even if it is established that the Complainant has a disability, she is still unable to satisfy the requirement that she be a "qualified individual with a disability." To be considered a qualified individual, Complainant must be able to both meet the requirements for her position and perform the fundamental duties of that position either with or without reasonable accommodation. 29 C.F.R. § 1630.2(m). A fundamental requirement for working in the Postal Store was to wait on customers, which required standing intermittedly. See IF, Exh. B at 3. Because Complainant claims she was no longer able or willing to perform this essential duty of her position, she does not fulfill the requirements of a qualified disabled individual. Thus, Complainant is unable to establish a prima facie case of disability discrimination for her alleged medical impairment, and her discrimination claim is without merit and should be dismissed.

**C. Agency Made Good Faith Effort to Accommodate Complainant**

Even if Complainant were able to establish a prima facie case of disability discrimination, the Complainant cannot show that the Agency failed to accommodate her. The Agency engaged in good faith in the interactive process.

It is Complainant, not the Agency, who is responsible for the breakdown of the interactive process by her failure to provide the requisite documentation and paperwork. Doe v. Soc. Sec. Admin., Appeal No. 01A14791 (Feb. 21, 2003); See IF, Exh. 7, Letter of Decision dated October 25, 2002 (describing how Complainant could have prevented not being permitted to work on October 7, 2002). Ms. Hammond asked Complainant to submit specific documentation so that she could accurately determine if any changes in the Complainant's medical condition warranted a review of the doctor's approved work duties associated with her restrictions. IF, Exh. B at 3. When Complainant failed to provide the requested and required documentation, she failed to cooperate in the interactive process and caused the process to breakdown. See Id. Without medical documentation specifying that the Complainant had to sit down all day and/or required a special chair, the Agency was unable to determine if a reasonable accommodation was appropriate, or even, for that matter, to determine if Complainant suffered from a disability as defined by the Rehabilitation Act.

Complainant argues that she was fine only performing the duties of the passport office. However, Complainant is not entitled to the accommodation of her choice, and an employer may choose among reasonable accommodations as long as the chosen accommodation is effective. See EEOC Guidance, Question 9, p. 17; See also, Cockrell v. U.S. Postal Serv., EEOC Appeal No. 01A20552 (Aug. 25, 2003). Since the Complainant was able to stand for 30 minutes at a time and she was only required to stand to wait on customers, which

Ms. Hammond stated was never more than thirty minutes, the assignment was within her restrictions. See IF, Exh. B at 3.

## II.    COMPLAINANT CLAIMS FOR RACE, SEX, AND AGE SHOULD BE DISMISSED

### A.    Complainant Cannot Make Out A Prima Facie Case Of Discrimination

Under the analytical framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973), the complainant bears the initial burden to establish a prima facie case of discrimination by presenting "a body of evidence such that, were it not rebutted, the trier of fact could conclude that unlawful discrimination did occur." <u>Williams v. Social Security Administration</u>, EEOC Appeal No. 01953677 (May 27, 1997). A complainant may establish a prima facie case by showing that (1) she belongs to a protected group; (2) she is similarly situated with employees outside the protected group; and (3) she was treated differently than similarly situated employees. <u>Id.</u>

To be similarly situated, "all relevant aspects" of the employees' situations must be "nearly identical." <u>Ray v. United States Postal Service</u>, EEOC Appeal No. 01952335 (June 19, 1997). The employees must "engage in the same conduct, report to the same supervisor, perform the same job function, and have equivalent, pertinent records." <u>Morales v. Social Security Administration</u>, EEOC Appeal No. 01975381 (Sept. 13, 2000).

In this case, Complainant merely alleges her own dissatisfaction or disagreement with having to work in the Postal Store and having to stand intermittedly to greet customers. Complainant has not presented any evidence of

similarly situated employees outside of her race, sex, or age that were treated more favorably. Accordingly, Complainant is clearly unable to point to any evidence from which a reasonable factfinder could infer discrimination. Therefore, she cannot prove a prima facie case of discrimination, and the Agency is entitled to summary judgment.

## III. THE AGENCY HAD LEGITIMATE, NONDISCRIMINATORY REASONS FOR ALL CHALLENGED ACTIONS

Assuming, for purposes of argument only, that Complainant could prove a prima facie case of discrimination, then the Agency must articulate legitimate, nondiscriminatory reasons for the challenged actions. Krick v. United States Postal Service, EEOC Appeal No. 01991877 (Jan. 25, 2002). To meet its burden, the Agency need only produce evidence "which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Id. (quoting Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 257 (1981)). The burden then shifts back to the complainant to show that the reason is a pretext for discrimination, which requires a showing both that the reason was false, and that discrimination was the real reason for the action. Id. The ultimate burden of proving intentional discrimination remains at all times on the complainant. Id.

Following are the Agency's legitimate, nondiscriminatory reasons for the challenged actions in this case:

1. Complainant Was Working In a Limited Duty Position

Limited Duty positions in the Postal Service are available only to Postal service employees receiving Federal Employees' Compensation Act ("FECA")

benefits. FECA requires a federal employer to find alternate work for injured

employees who cannot perform the functions of their regular duty positions. 20

C.F.R. § 10.505; 10.515 (2002). The positions are managed by the Department

of Labor's Office of Workers' Compensation ("OWCP"). 20 C.F.R. §10.1 (2002).

The injured employee is obligated to seek work and accept "suitable work"

offered. Id. The goal of the OWCP program is to return injured employees to

work as soon as medically possible. Id. The Complainant was given work within

her restrictions. See IF, Exh. B at 3. When the Complainant stated she would

no longer perform her duties, and submitted no updated medical documentation

that she could not perform these duties, she was sent home. Id.

Agencies are given great latitude in managing the performance of Agency

operations. It is within management's discretion to direct employees in the

performance of official duties; to maintain the efficiency of the operations; and to

determine the methods, means, and personnel by which such operations are to

be conducted. Williams v. USPS, Appeal No. 01995331, 2001 EEOPUB LEXIS

7460 (October 22, 2001). The undisputed facts in this complaint clearly show

that what is at issue is the Complainant did not want to perform new duties within

her restrictions. See IF, Exh. 7, Letter of Decision from the APWU.

Accordingly, the Agency had legitimate, nondiscriminatory reasons for all

challenged actions in this case. Complainant's subjective belief that the reasons

were a pretext for discrimination or retaliation does not create a genuine issue of

fact. See Betkerur v. Aultman Hosp. Ass'n, 78 F.3d 1079, 1097 (3d Cir. 1996);

Johnson v. University of Wisconsin-Eau Claire, 70 F.3d 469, 479-80 (7th Cir.

1995).  A complainant's "mere conjecture" that an employer's explanation is

pretextual is not sufficient to avoid summary judgment.  George v. United States

Postal Service, EEOC Appeal No. 01A31214 (July 28, 2003).  Moreover, harsh

treatment or mistakes in procedure are not sufficient to support a finding that an

agency's reasons were a pretext for discrimination.  See, e.g., Whitley v. United

States Postal Service, EEOC Appeal Nos. 01956726, 01956727 (Aug. 20, 1997).

As the Commission has explained:

> [A] mere recitation that there is a factual dispute is insufficient.  The
> party opposing summary judgment must identify the disputed facts
> in the record with specificity or demonstrate that there is a dispute
> by producing affidavits or records that tend to disprove the facts
> asserted by the moving party.

EEOC MD 110, Chapter 7.E.4.

Complainant in this case cannot produce any evidence to show that the

Agency's legitimate, nondiscriminatory reasons for the challenged actions were

pretexts for discrimination.  Therefore, the Agency is entitled to summary

judgment.

## IV.  CONCLUSION

For the foregoing reasons, the Agency respectfully requests that the

Administrative Judge find no discrimination and enter summary judgment in favor

of the Agency.

Respectfully submitted,

Ayoka A. Campbell
Attorney
Capital Metro Law Office
United States Postal Service

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the Agency's Motion for a Decision Without

A Hearing was sent as indicated below on this 23rd of June 2005, to:

<u>Administrative Judge</u>                        <u>BY FASCIMILE AND FIRST CLASS MAIL</u>

Frances del Toro                                (202) 419-0739
Administrative Judge
1801 L Street, N.W.
Suite 100
Washington, D.C. 20507-1002


<u>Complainant</u>                                <u>BY FIRST CLASS MAIL ONLY</u>

Jan L. Austin
5036 11th St., N.E.
Washington, D.C. 20017-2848


<u>Complainant Representative</u>                <u>BY FIRST CLASS MAIL ONLY</u>

Jan L. Austin

C/O Antoini M. Jones

Attorney at Law

6811 Kenilworth Ave., Ste 210

Riverdale, MD 20737-1333

DATE:  June 23, 2005

Ayoka A. Campbell, Esq.
U.S. Postal Service
Capital Metro Law Office
400 Virginia Ave., S.W., Suite 650
Washington, D.C.  20024-2730
(202) 314-6838 Office
(202) 314-6820 Fax

# AGENCY EXHIBIT 1

12. Describe in detail how your medical condition affects your ability to perform each

and every major life activity.

**Response:**    I find it almost impossible to complete my daily activities such as laundry, cleaning, shopping. Is suffer sever pain during climbing stars, stooping, twisting, bending, reaching, sitting or standing. Driving is very limited. I am unable to dangle my legs without pain. I need to wear slip on shoes because I am unable to bend to lace my shoes. I am not able to contribute to my grandchild's day-to-day needs. While sitting I'm in need if a pillow or cushion to tolerate the back pain. I'm always need back support while sitting.

13. Identify all persons having knowledge regarding the allegations relating to your

claims of damages, and describe the extent and nature of their knowledge.

**Response:**    See Interrogatory Response number 1.

## REQUEST FOR PRODUCTION OF DOCUMENTS

1.   Any and all documents identified in Complainant's answers to the Agency's

First Set of Interrogatories to Complainant.

Response:  See Interrogatory Response number 7, 8, 9.

2.   Any and all documents reviewed or relied upon in answering the Agency's

First Set of Interrogatories to Complainant.

Response:  None

3.   If you are claiming that the alleged discrimination in this case caused you to

suffer any physical, psychological, or emotional injuries or conditions, then produce all

records of  treatment from hospitals, health care providers or other individuals, if any,

that you have received during the past five years for any such injuries or conditions.

Response:     None



RECEIVED

JUL 2 1 2005

CAPITAL METRO AREA LAW OFFICE
U.S. POSTAL SERVICE

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Washington Field Office
1400 L St., N.W., Suite 200
Washington, DC 20005

OFFICIAL BUSINESS

Angela Campbell, Esq.
M.S. Patel Pluviei
Capital Milestones Office
400 Virginia Avenue, SW
Suite 650
Washington, DC 20024-2730

FIRST
CLASS

# EXHIBIT 18